# CHARLESTON

YEATER, ADMR. v. JENNINGS OIL COMPANY.

Submitted October 28, 1914. Decided December 15, 1914.

1. PLEADING—*Sufficiency of Complaint—Mistakes in Spelling.*
    A declaration charging negligence in providing a defective steam *guage,* instead of steam *gauge,* is not bad on demurrer for the bad spelling of the word "gauge." (p. 347).

2. TRIAL—*Death of Servant—Instructions—Assuming Controverted Fact.*

   The instructions in this case given at the instance of plaintiff and the substance of which are noted in the opinion propound correct legal propositions, applicable to the case made by the evidence, and were properly given to the jury.   (p. 348).

3. SAME—*Death of Servant—Defective Appliances—Refusal of Instruction—Assumption of Controverted Fact.*

   Defendant's instruction number 15, was properly rejected for assuming the fact, not supported by the evidence, that deceased voluntarily went to the boiler, which exploded, causing his death. Other instructions given fully covered the question of fellow servantcy, and proximate cause of the injury introduced into this instruction.   (p. 351).

4. MASTER AND SERVANT—*Death of Servant—Defective Appliances— Sufficiency of Evidence.*

   The verdict was fully supported by the evidence, and there was no error in denying defendant's motion to set aside the verdict and award it a new trial.   (p. 351).

5. DEATH—*Damages—Excessive Recovery.*

   The verdict, $8,000.00, damages awarded for the death of deceased, an unmarried son of the beneficiary, was not excessive.   (p. 353).

Error to Circuit Court, Wetzel County.

Action by J. W. Yeater, administrator, etc., against the Jennings Oil Company.  Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Thos. P. Jacobs, M. R. Morris* and *Patterson, Crawford, Miller & Arensberg,* for plaintiff in error.

*F. V. Iams, J. H. Robinson* and *E. L. Robinson,* for defendant in error.

MILLER, PRESIDENT:

Action on the case by his administrator for the death of William Collier Lewis, by the negligence and wrongful act of defendant.

The judgment on the verdict complained of was for eight thousand dollars.

The declaration, in three counts, was demurred to, and the demurrer overruled, and we think properly.   The only

point of error urged here is that the pleader employed the word ''guage'' for the word ''gauge'', in charging the negligence of defendant in providing a defective steam gauge, resulting in the explosion of its steam boiler, and in the death of decedent. Though seriously argued in the brief of counsel we see no real merit in the point and must overrule it. The first two counts charge negligence in furnishing a defective steam gauge, the third in providing a defective, insecure, unsafe, unsound, rotten and unsuitable boiler, in consequence of which the boiler exploded and killed decedent. It does not appear to us that the declaration is bad in any substantial way.

The alleged insufficiency of the evidence to support the verdict, and denial of defendant's motion for a new trial, are the main points relied on, but we will first dispose of the points made against the giving and refusing of the instructions. First, with respect to plaintiff's instructions numbered 1, 3a, 4, 5, 6, 7, and 10. Number 1 defines negligence and told the jury that if they find defendant guilty of negligence, of doing or leaving undone that which an ordinarily prudent man would have done, resulting in the death of decedent, the defendant was guilty of negligence. Number 3a is to the effect that if defendant knowingly supplied a defective steam gauge, which failed to register the steam pressure on the boiler, and that such negligence proximately caused the death of decedent, the defendant was guilty and the jury should so find and assess damage fair and just, not exceeding the amount sued for. Number 4 is substantially the same as number 3. Number 5 relates to the right of the jury, in judging of the credibility of the witnesses, to take into consideration their interest, if any, in the matter in controversy. Number 6, to the non-assignable duty of the master to furnish reasonably safe machinery, and a reasonably safe place to work, and its consequential liability to its servant for neglect of that duty, in the usual terms. Number 7 relates to the use of the defective steam gauge, and told the jury that if they found the same defective and not to register correctly the steam pressure in the boiler at the time of the explosion, thereby misleading and deceiving its servant, and that the defective condition of said gauge was the proximate cause of

the explosion, and that its defective condition was, at or before the time of the explosion, known to defendant, defendant was liable to plaintiff in damages, unless they should find that the deceased was not at the place of his injury pursuant to any employment by the defendant. Number 10 relates to the method of ascertaining the damages, and told the jury that if they should find plaintiff entitled to recover damages, they should first have reference to the pecuniary loss sustained by the father, fixing such sum as would be equal to the probable earnings of the deceased, considering his age, earning capacity, experience and habits, during his probable lifetime and the life time of his father if he had not been killed, etc.

We see nothing wrong in these instructions as to form or substance, but we will further consider number 10 hereafter. They are not generally binding instructions, but cover correct legal propositions, certainly in the abstract. The criticisms of counsel are, not that they propound bad law, but first, that they are irrelevant, immaterial and misleading, in that they assume that the place assigned deceased to work was at the boiler house, and in effect call the mind of the jury away from the oil well, where the "roustabout" gang, of which deceased was a member, was working, to the boiler house, and assume that the boiler was defective, and that decedent was properly at the boiler house under his employment.

We do not see that these instructions assume any really controverted fact. None of them, unless it be number 3a, assume that deceased was rightly at the boiler house when killed. Number 7, does submit that question to the jury, but the fact is not really controverted, and we do not think there was any error in the assumption that deceased was at the place where he had the right to be as an employee. Besides, instructions given for defendant submit all these theories to the jury. The evidence shows that he was a member of a so-called "roustabout gang", in charge of and under the direction of the man employed to clean out the well, and it is fully proven that deceased was sent to the boiler house in company with others of the gang to assist in doing some work on the boiler; that deceased himself had been specially sent to obtain some bolts or taps to use at the boiler house, and some

tallow cups to use on the engine at the well, and that after
this work had been done he had gone a short distance above
the boiler where he lived to get something to eat, and that at
the time he was killed he was on his way back, having stopped
at the boiler house waiting for the man in charge there to get
up sufficient pressure of steam to do the work of cleaning out
the well, located a short distance below the boiler house,
before going to the well. It is proven that the man in charge
of the boiler knew nothing about the defective steam gauge,
and there is no evidence that deceased knew anything about it,
but it is fully proven that defendant and its representatives
knew that it would not properly register the steam pressure
months before the accident occurred, and were fully warned
of its condition. So that we do not see that any controverted
fact is assumed by the instructions complained of. There is
nothing in the record on which to base the theory of the de-
fendant that deceased assumed the risk incident either to a
defective steam gauge or a defective boiler, and there is no
room for the application of the principles enunciated in *Stew-
art* v. *Ohio River R. Co.*, 40 W. Va. 188, and *Knight* v. *Cooper*,
36 W. Va. 232. Of course deceased assumed any risks neces-
sarily incident to the character of his employment, but he
did not assume the risk of a defective steam gauge or a defect-
ive boiler, unknown to him.

Instruction number 10 is more especially complained of,
because of its supposed responsibility for the large verdict.
It is unnecessary to enter into any extended discussion of this
instruction, or the principles underlying it. Our statute,
section 6, chapter 103, serial section 4410, Code 1913, the same
as the statute of Virginia, authorizes the jury in such cases
to "give such damages as they shall deem fair and just, not
exceeding ten thousand dollars." As interpreted by the Vir-
ginia court and this court this statute justifies the instruction
complained of. Indeed, it is substantially plaintiff's instruc-
tion number 5, in *Norfolk & W. R. Co.* v. *Cheatwood,* 103 Va.
356, 364, which followed *B. & O. R. R. Co.* v. *Wightman's
Admr.*, 29 Grat. 431, *B. & O. R. R. Co.* v. *Noell*, 32 Grat. 494,
and *Portsmouth R. R. Co.* v *Peed,* 102 Va. 662, and which
cases are cited approvingly and followed in our case of *Kelley*

v. *Railroad Co.,* 58 W. Va. 216, and again in *Wigal* v. *City of Parkersburg,* 74 W. Va. 25, 81 S. E. 554.

Next it is complained that the court improperly rejected defendant's instruction number 15. This instruction, after defining fellow servantcy, would have told the jury, that if they found that the .cleaning out man suggested that something be done with the boiler so that the tubing could be pulled on that day, and that the deceased and one Norris volunteered to go with Bungard, the fireman, to repair the boiler, then Justin, Lewis, Norris and Bungard were fellow servants, and if they further found that Bungard negligently and carelessly weighted down the safety valve, causing the boiler to explode and resulting in the death of decedent, defendant was not liable and they should find for it. We think the court properly rejected this instruction, if for no other reason, because there is no evidence showing or tending to show that deceased volunteered with others to go to the boiler house as stated. They were ordered to go there by the cleaning out man who had charge of the gang. Moreover, there is little evidence, hardly a scintilla of evidence, going to show that the proximate cause of the injury was the weighting down of the safety valve. We will dispose of that subject later in disposing of the point of error on the motion for a new trial. All theories of the defendant were fully covered by other instructions given at its instance. Its theory of fellow servantcy was fully covered, we think, by instructions numbered 7 and 14, given.

Lastly, did the court err in denying defendant's motion to set aside the verdict and grant it a new trial, on either of the grounds relied upon, namely, want of evidence to support the verdict, or that the verdict is excessive? We have already indicated the opinion that the evidence fully shows deceased had a right to be at the boiler house, where he was killed. That he was sent there to do work, assist in doing work, put the boiler in use, by the cleaning out man in charge of the roustabout gang, is not a controverted fact. The boiler house was a place where he could have been reasonably expected to work, and that he was sent there for that purpose by the man in authority, is fully proven. The boiler house constituted a part of the plant employed in operating the well and

in cleaning out the same; and under his employment deceased was required to be wherever he was ordered. While the evidence tends to show that his services would have been required at the well when there was sufficient steam in the boiler, it also shows that he was tarrying at the boiler house until sufficient steam had been procured for the operations at the well. We do not think, therefore, that there is anything in the point that the deceased was at a place other than where he was required to be under the terms of his employment.

That the boiler was an old defective one, and had on it a defective steam gauge, all known to the defendant, are not really controverted facts. But the point is urged strongly in briefs and supplemental briefs filed on behalf of the defendant, that the evidence leaves it so uncertain as to whether the weighting down of the safety valve by Bungard, a fellow servant, or the defective steam gauge, was the proximate cause of the explosion, and in such cases recovery is precluded. The proposition stated in the language of counsel is: "That where the effect of the evidence is merely to establish that there were two causes, either one of which may have been the proximate cause of the injury, the burden is on the plaintiff to show that the cause for which the defendant is responsible was the one which produced the injury sought to be recovered for." For this they cite 4 Labatt on Master and Servant, (2nd ed.) pages 4898, 4899, and cases cited in notes. Labatt says: "From this rule it follows that the action cannot be maintained, if, after all the testimony has been put in, it remains doubtful whether the injury resulted from the cause suggested by the master, or from the cause suggested by the servant. As long as there is nothing more tangible to proceed upon than two or more conjectural theories, it is immaterial that the theory which is suggested in the interest of the servant is more probable than that which is suggested in the interest of the master." We have examined the authorities for the proposition cited and relied upon by counsel, and while we have no fault to find with them, we do not think the evidence leaves it doubtful, conjectural or uncertain as to whose negligence was the proximate cause of the injury. That the boiler was old and defective and had a defective steam gauge installed on it by defendant, is, as we

have said, not a controverted fact. While the evidence does show a slight weighting down of the safety valve by Bungard, it also shows that the boiler was leaking at the safety valve and had leaked there before, and that he was deceived thereby in believing that it was because of this defect that he could not get up steam to the required pressure, 110 pounds. If the gauge had properly registered the pressure he would not have weighted the safety valve; there would have been no necessity for his doing so.

But is the verdict, $8,000.00, so excessive as under the rules governing us it should be set aside? We cannot say so. Our statute, referred to, gives the jury right to give such verdict as they shall deem fair and just, within the limitation of ten thousand dollars. The value of a man's life was involved, negligently and wrongfully cut off by the fault of defendant. The elements properly to be considered by a jury in such cases, as we have shown, were properly submitted to the jury. We cannot say the verdict is wrong.

The judgment will, therefore, be affirmed.

*Affirmed.*