42871. ATLANTIC COAST LINE RAILROAD COMPANY
v. DAUGHERTY, Administratrix.

ARGUED JUNE 30, 1967—DECIDED OCTOBER 5, 1967.

*Larry E. Pedrick, Hubert H. Howard,* for appellant.

*Joseph B. Bergen,* for appellee.

JORDAN, Presiding Judge. ■ In its first enumerated error the railroad company asserts that the trial judge erred on June 22, 1964, in overruling its grounds of special demurrer to the petition as amended. Counsel contend that the allegations of negligence are too indefinite to enable the company to present a proper defense.

The petition in general shows that the railroad company has two main lines from Jesup, Ga., to Doctortown, Ga., located some three miles to the north of Jesup. At the northern boundary of Doctortown, which is just south of the Altamaha River, the two lines converge into a single track which continues to the north across the river. These two lines in Doctortown are known as the east main line and west main line, and between these lines is a center pass track which joins the west main line at two points, one point being immediately south of the main line junction, and the other approximately one-half mile south of the junction. A spur track from the west connects with the west main line about one-eighth of a mile south of the junction. The center pass track is used for storing railroad cars to be subsequently switched to the spur track. There are two main lines to Jesup from the south, one through Waycross, Ga. to the southwest, and one through Nahunta, Ga., to the south. After showing a so-called normal pattern of traffic for these

lines, it is alleged that northbound traffic through Nahunta would "always normally use" the east main line to Doctortown, "especially" when railroad cars are being switched from the center pass track to the west main line.

On January 20, 1963, shortly after 6 p.m. the plaintiff's late husband, acting pursuant to instructions, completed the checking of some 30 gondola cars on the center pass track at Doctortown and, holding a lighted lantern, proceeded northward between the west main line and the center pass track towards the spur switch on the west main line. A dispatcher had advised the conductor of the switching crew of which the deceased was a member that Train No. 2, an express passenger train, was proceeding northward at approximately 6:35 p.m. The normal rate of speed for the train out of Jesup was 79 m.p.h., but the train was supposed to slow down so as not to exceed 40 m.p.h. at the Doctortown junction, and 30 m.p.h. while crossing the Altamaha River bridge. The dispatcher routed the train over the west main line to "save time" as it was "8 minutes behind schedule." Use of the west main line would avoid a slow down for a slight curve on the east main line where it merged with the west main line at the Doctortown junction. At approximately 6:39 p.m. the train struck Daugherty, who was then walking northward along the west main line, at a point approximately 480 feet south of the spur switch.

It is further alleged that at the point of impact the train was traveling at a speed in excess of 65 m.p.h. which was in excess of a speed which would enable it to slow down to 40 m.p.h. at the junction, and that in any event the speed was excessive for conditions then and there prevailing, as it was dark, windy, and raining, which conditions hampered the senses of sight and hearing in perceiving the oncoming train.

In Paragraphs 16 and 17 of the petition, to which the special demurrers are directed, it is alleged that the railroad company created the hazardous conditions which were dangerous to the employee, failed to supervise the operation properly, violated existing customs and practices, failed to provide a safe place to work and to maintain the area in a safe condition, all of which severally, collectively, and concurrently constitute neg-

ligence which proximately caused the employee's death. Paragraph 16 as amended indicates that the failure to provide a safe place to work is based on the use of the center pass track in a manner requiring the transfer of cars across the west main line used for express trains in order to place the cars on the spur track for delivery to their ultimate destination.

In Brown v. Western Railway of Alabama, 338 U. S. 294 (70 SC 105, 94 LE 100), the Supreme Court of the United States, in ruling on the sufficiency of a petition brought in a Georgia court to support a cause of action in an FELA case, as against a general demurrer, rejected application of the Georgia rule of strict construction against the pleader, and pointed out that "[s]trict local rules of pleading cannot be used to impose unnecessary burdens upon rights of recovery authorized by federal laws." P. 298. Implicit in the determination in that case, that the allegations were sufficient to permit introduction of evidence from which a jury might infer negligence by the railroad in failing to furnish a reasonably safe place to work, is the view, in line with federal procedure, that all the litigant need do is allege sufficient facts from which, upon the introduction of supporting evidence, a jury might infer negligence. We think the position of the Supreme Court in the Brown case is equally applicable to a situation involving special demurrers where the defendant in an FELA action seeks to obtain explicit allegations of negligence in conformity with the Georgia practice. In other words, as we understand the Brown decision, if the allegations of the petition are sufficient to place the defendant on notice of certain facts from which a jury might infer negligence, the state court should refrain from imposing additional pleading requirements based on local procedures which might be regarded as imposing an unnecessary burden on a litigant seeking to enforce a federal right through state court action. Accordingly, in the present case we deem it inappropriate to apply rulings on special demurrers by the courts of this state in cases not involving a cause of action under federal law such as an FELA action.

In view of the above we do not consider the allegations of negligence as too indefinite to enable the railroad company to

442

present a proper defense. The petition, among other things, purports to show operation of the train at excessive speed, either in violation of an established speed limit or as excessive under the conditions then existing, in a situation where the employee may have anticipated that it would be routed on the east main line instead of the west main line, and a track layout which allegedly created an unsafe condition. These alleged facts are sufficient to put the railroad on notice as to what constitutes the basis for alleged negligence causing the death of an employee, and to enable it to defend the action, either by refuting the evidence offered by the plaintiff in support of the allegations or by other means. The trial judge properly overruled the defendant's special demurrers.

■ The second enumerated error is directed to the order of the trial judge on July 6, 1966, granting the plaintiff's motion for summary judgment on the issue of liability, and his order of November 3, 1966, overruling the defendant's motion to set aside the summary judgment. The third enumerated error is directed to the statement of the trial judge to the jury, before the introduction of evidence, that the court had determined the defendant was liable and that the verdict would have to be for the plaintiff in some amount, and portions of his charge to the jury after the close of evidence to the same effect.

The plaintiff moved for summary judgment based on the pleadings and the defendant's answers to the interrogatories. Pertinent allegations of the petition are summarized in the preceding division of this opinion. The company in answer admitted jurisdiction, venue, and the death of the employee as caused by the impact of a diesel locomotive, but otherwise denied the allegations of the petition, and pleaded the negligence of the employee as the proximate cause of his death. In answering the interrogatories the company provided a copy of a report of its claim agent and copies of unsworn statements of various employes.

Under the summary judgment procedure a plaintiff is entitled to summary judgment on the issue of liability if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law. *Code Ann.* § 110-1203. It is proper to consider interrogatories and the answers thereto as evidence in support of a motion for summary judgment. *Benefield v. Malone,* 110 Ga. App. 607, 612 (139 SE2d 500). Recognizing that in an FELA case any causative negligence by the railroad company would establish liability and allow at least a partial recovery (Title 45, USC, §§ 51, 53, 54) the real issue on the motion for summary judgment in this case is whether the pleadings, admissions, and the interrogatories and answers thereto show causative negligence as a matter of law which would render the company liable in damages to some extent, leaving for jury determination the total amount of damages and the diminution, if any, by reason of any negligence attributable to the employee. In numerous cases this court has reiterated the principle that questions of negligence and causation, except in plain, palpable, and indisputable cases, are solely for jury determination. The alleged facts in this case, as distinguished from the conclusions of the pleader, and the information provided by the answers to the interrogatories disclose a classic example of a situation where only a jury should determine what acts or omissions were negligence and what negligence, if any, caused the death. As to the negligence of the railroad as a cause of death, the record raises the following questions, among others, but does not answer them as a matter of law: Was the speed of the train, approximately 65 m.p.h. at the time of impact, excessive under the circumstances then existing, either in violation of established speed limits, if any, or in violation of safe operating practices? Did the engineer, upon detecting the presence of the employee on the track, take such action as was reasonable and proper under the circumstances, to warn the employee and to decrease the speed of the train? Did the railroad, under the circumstances, furnish the employee with a reasonably safe place to work? Was there a violation of customary practice or procedure in routing the train over the west main line? Which of these acts or omissions, if any, caused or contributed to the death of the employee? Also raised by the pleadings, and by no means eliminated by the information supplied by the interrogatories, is the

issue of whether the employee's acts or omissions, in walking on the west main line and in failing to step aside for the approaching train, caused his death, to the complete exclusion of any negligent acts or omissions by the railroad company as the cause of death. Stated otherwise, was he negligent, and if so, was his negligence the sole cause of death? These were jury questions which the trial judge erroneously eliminated by his summary judgment for the plaintiff on the issue of liability, and it follows that his subsequent acts based on such an erroneous determination were also error.

■ In the fourth, sixth, and ninth enumerated errors the railroad company complains that it was error to admit testimony by the plaintiff and a minister to the effect that the deceased was a person of good character, a devout Christian active in church affairs, and an affectionate husband. Counsel for the company objected to this testimony as irrelevant, and opposing counsel insisted that the testimony was relevant to show that the deceased was a person of stable character who would have continued in his employment. Testimony concerning the decedent's work record, thrifty habits, and whether the character of the deceased was such that he probably would have continued in his employment and probably would have continued to make adequate provision for his family are relevant intangible factors for consideration in establishing the pecuniary loss resulting from his untimely death. See Allendorf v. Elgin, Joliet &c. R. Co., 8 Ill.2d 164 (133 NE2d 288, 79 ALR2d 241); Griffith v. Midland Valley R. Co., 100 Kan. 500 (166 P 467). Testimony as to his church activities and religious beliefs, however, would appear to be irrelevant, and was improperly admitted. *Code* § 38-202.

■ The fifth enumerated error is directed to testimony of the plaintiff that she had received no benefits from the railroad since her husband's death except salary due, and testimony of the amount she had received from the Railroad Retirement Board, admitted over objection as to relevancy, it being contended that it would create an inference that the railroad had withheld something from the widow. Counsel for the plaintiff indicated that he wanted to eliminate the possibility of any

claim of setoff (see Title 45, USC, § 55) for any amount she received. There was no issue of setoff in the case, and the testimony is unrelated to the claim of the plaintiff without such an issue. Under the circumstances the trial judge, who himself questioned the direct relevancy of the evidence, should have sustained the appropriate and timely objection of counsel for the railroad company.

■ The record does not support the contention made in the seventh enumerated error. The eighth enumerated error has been expressly abandoned.

■ The record, as cited in the tenth enumerated error, fails to show that the witness actually testified as alleged, and this ground is without merit.

■ In the eleventh and twelfth enumerated errors the company complains of the refusal of the trial court on two occasions to allow a witness to testify as to a statement made to him by another witness. The first instance involves a telephone conversation between the conductor of the switching crew of which the deceased was a member and the dispatcher controlling the use of the main lines. Although the conductor testified as to what he told the dispatcher and what the dispatcher told him, and repeated the gist of the conversation on cross examination, the trial court, upon objection of counsel for the plaintiff that it was inadmissible hearsay, refused to allow the dispatcher to testify as to what the conductor said to him in the course of the conversation. The second instance involves the refusal of the court, upon the same objection of counsel for the plaintiff, to allow the engineer of the switching crew to testify that the conductor told him he was going to the telephone, although the witness was allowed to testify that the conductor did go to the telephone, confirming the conductor's testimony as to his presence when the conductor went to the telephone. In the circumstances here shown the entire conversations were admissible to explain conduct and ascertain motives in respect to the availability and use of the west main line for switching cars by the switching crew of which the deceased was a member, not as hearsay, but as original evidence, and each witness should have been allowed to testify not only as to what he said, but what

he heard. *Code* § 38-302. When considered with other testimony it is entirely relevant to the issue of whether the deceased knew or should have known that the express passenger train was proceeding or would proceed up the west main line within a short time.

■ In the thirteenth enumerated error the railroad company complains of the refusal of the court to declare a mistrial because of the conduct of counsel.

In view of reversal of the judgment of the lower court for other reasons the situation here shown, which is unlikely to occur on another trial, requires no ruling.

■ In the fourteenth enumerated error the company complains of the charge to the jury that "Under the Federal Employers' Liability Act recovery for injuries is not necessarily barred because an injured employee may have participated in the act which caused the injury or death." It is contended that the charge was confusing to the jury in implying that contributory negligence would not be chargeable to the deceased if he participated in the act which caused his death, and that such charge is not applicable in the present case.

Considered in context with other instructions illustrating the basis and extent of FELA liability predicated on negligence, apart from the erroneous instructions based on the court's determination of negligence as a matter of law by the railroad to support recovery in some degree, the charge was not misleading or confusing, and was applicable to show the employee's acts or omissions while performing his duties would not necessarily bar recovery. There is no merit in this enumeration of error for any reason assigned. We note, however, that as an abstract principle of law it could be misleading or confusing unless given with a complete explanation of the effect of an employee's own acts or omissions as constituting negligence as a causative factor to defeat or diminish recovery.

■ The fifteenth and sixteenth enumerated errors are directed to excerpts from the charge on the grounds that they contain an expression of opinion and are argumentative. We see no merit in these contentions under the facts of this case.

■ In the seventeenth enumerated error the railroad com-

pany complains of an excerpt from the charge to the effect that the jury might consider the loss of the husband's services about the home as an intangible element as regards recovery. In the eighteenth enumerated error the company complains of similar instructions regarding such intangibles as whether the husband was a kind and faithful husband and of thrifty habits, which the trial court stated the jury could consider as circumstances relating to earning power and disposition to contribute to the welfare of his family. The company contends that there was no evidence of the value of the services about the home, that whether the husband was kind or faithful is not a proper element, and that these instructions contain expressions of opinion and are argumentative.

The present value of a man's life to his widow or dependents is in itself an intangible which may involve consideration of many subjective and objective factors, and any intangible circumstance tending to show whether he was a person who would or would not have made adequate provision for his family is worthy of consideration in determining the ultimate issue. The court having properly admitted some evidence of this nature (see Division 3 of this opinion) it was not inappropriate to point out to the jury the relationship of this evidence in determining damages. These enumerated errors are without merit.

In the nineteenth enumerated error the company complains of the failure to include a statement in requested instructions concerning the judgment and discretion of the railroad management in providing a track layout, as follows: "And their decisions of doubtful questions regarding such matters are presumptively right and may not be held to constitute actual negligence in the absence of clear proof to that effect."

We are of the opinion that whether the track layout provided a reasonably safe place to work and had any causal connection with the death of the employee, under the circumstances shown in this case, were jury questions. This is virtually conceded by the requested instructions, but the requested language, that it "may not be held to constitute actual negligence in the absence of clear proof to that effect," if given to a jury, would create the impression that the plaintiff had to overcome any presump-

tion or inference as to the exercise of sound judgment and discretion by the management of the railroad as to the track layout with a higher degree of proof than might otherwise be required to establish negligence. The law does not require this. The nineteenth enumerated error is without merit.

■ Finally, in the twentieth enumerated error, the railroad company complains of the action of the trial court in submitting to the jury the measure of damages as claimed by the petition as amended, and of various acts in connection therewith. Among other reasons asserted as error the railroad company contends that the end result was confusing to the jury and left the jury with an incorrect impression as to the true measure of damages.

The trial judge in his original and final instructions correctly provided the jury with the substance of the true measure of damages, which is stated in Chesapeake & Ohio R. Co. v. Kelly, 241 U. S. 485, 489 (36 SC 630, 60 LE 1117) as "equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased." On the subsequent trial of the case, any instructions departing from this basic rule and which may confuse the jury on the issue of damages should be omitted.

*Judgment reversed. Deen and Quillian, JJ., concur.*