JOHN C. BOWMAN, *Admr., etc.*

*Appellant*

*v.*

EDDA B. BARNES, *Individually, et al., etc.*

*Appellees*

(No. 15073)

JOHN C. BOWMAN, *Admr., etc.*

*v.*

EDDA B. BARNES, *etc., et al., Dfts. Below*

EDDA B. BARNES, *etc., Appellant,*

THE B & O RAILROAD CO., *etc., Appellee*

(NOS. 15073, 15120)

Decided September 29, 1981.

*Rice, Hannis & Douglas and Charles F. Printz, Jr.*, for appellant Bowman in No. 15073.

*Avey, Steptoe, Perry, VanMetre & Rockwell and Sprague W. Hazard,* for appellant Barnes in No. 15120.

*Martin & Seibert, Clarence E. Martin, Jr. and Clarence E. Martin, III,* for appellees.

MILLER, JUSTICE:

This appeal involves a railroad crossing wrongful death claim. The question of the proper procedural treatment of multiple defendants in a comparative negligence trial is raised. The standard of care required of a railroad at a railroad crossing must also be resolved, as well as several questions regarding evidentiary issues. We have consolidated plaintiff Bowman's appeal with defendant Barnes' appeal since both involve the issue of whether the trial court erred in requiring separate trials as to these defendants. Plaintiff Bowman has the remaining separate assignments of error.

The accident in this case occurred on the evening of September 19, 1977, at the intersection of a State secondary road and a double set of railroad tracks in Berkeley County. Plaintiff's decedent, David Allen Bowman, was traveling as a passenger in an automobile operated by Terence R. Barnes. As the automobile crossed the railroad tracks, it was struck by two helper engines operated by the Baltimore & Ohio Railroad Company (Railroad). In the collision, both Bowman and the driver, Barnes, were

killed. A second passenger, Charles W. Barbour, survived the accident.

Plaintiff filed a wrongful death action naming as defendants Edda B. Barnes, individually, as the owner of the automobile, and also as administratrix of the estate of Terence R. Barnes, the driver; Margaret A. Dorsey, executrix of the estate of Paul R. Dorsey; and the Railroad. By order dated September 30, 1980, Margaret A. Dorsey was dismissed as a party defendant. Defendant Railroad raised the issue of comparative negligence, alleging that the plaintiff, as a passenger, failed to exercise reasonable care in warning the driver of impending danger, or by otherwise not taking steps to ensure his own safety.

At trial, after the selection of the jury, but prior to opening statements, the court, on its own motion, ordered separate trials of plaintiff's claim against the defendant Railroad and plaintiff's claim against the defendant Barnes. Over plaintiff's and defendant Barnes' objection, the court then proceeded to trial on plaintiff's claim against the Railroad.

The jury was given special verdict forms to permit a verdict to be computed under comparative negligence principles. The jury answered the first interrogatory, "Was the defendant, the Baltimore & Ohio Railroad Company negligent?" in the negative, so that a verdict was entered against plaintiff. Consequently, further verdict interrogatories were not answered.

I.

*Timely Motion for New Trial*

As a preliminary matter, the Railroad urges that this appeal should be dismissed because plaintiff failed to make a timely motion for a new trial, with the result that, under Rule 59(f) of the West Virginia Rules of Civil Procedure (R.C.P.), plaintiff-appellant is "deemed to have waived all errors occurring during the trial."[1] The Railroad points

---

[1] Rule 59(f) of the West Virginia Rules of Civil Procedure provides:

out that the circuit court judgment was entered on October 2, 1980, and the motion for a new trial was not served until October 15, 1980, several days beyond the 10-day period provided for by Rule 59(b).[2]

However, at the conclusion of trial on October 2, 1980, plaintiff's counsel made a motion orally for a new trial, although he did not specify the grounds on which it was based. At that time, the trial court, without objection from the Railroad, permitted the plaintiff to proceed under a common law motion in arrest of judgment in lieu of a motion for new trial. By an order dated October 2, 1980, the court set a hearing on the motion for October 20.[3] Thus, the plaintiff received in advance a purported waiver of the time limit from the trial court, with no objection on the part of the defendant-appellee Railroad.

In its motion to dismiss the appeal, the Railroad argues that under Rule 6(b), R.C.P., the trial court is not permitted to extend the time period for a motion for a new trial.[4]

---

"(f) *Effect of failure to move for new tiral.* —If a party fails to make a timely motion for a new trial, after a trial by jury wherein a verdict is returned without a direction thereof by the court, the party is deemed to have waived all errors occurring during the trial which he might have assigned as grounds in support of such motion; provided that if a party has made a motion under Rule 50(b) for judgment in accordance with his motion for a directed verdict and such motion is denied, his failure to move for a new trial is not a waiver of error in the court's denying or failing to grant such motion for a directed verdict."

[2] Rule 59(b) states:

"(b) *Time for motion.* —A motion for a new trial shall be served not later than 10 days after the entry of the judgment."

[3] Although plaintiff's motion was phrased in terms used at common law, as well as in criminal trials, (W. Va. Code, 62-2-11, refers to "arrest of judgment" in criminal cases), part of plaintiff's motion was clearly to "grant a new trial," and we will treat such as a motion under Rule 59(b), R.C.P.

[4] Rule 6(b) states:

"(b) *Enlargement.* —When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, all the parties to the action, by written stipulation filed with the court, may agree at any time to a different period, or the court for cause shown may at any time in its discretion (1) with or without motion or notice order the

The United States Supreme Court and federal circuit courts have made it clear that where a trial court makes an erroneous ruling extending a time period under the Federal Rules of Civil Procedure, and one of the parties relies on the ruling, such party will not be foreclosed from further pursuit of his claim because of this error. This holding is particularly true where the opposing party acquiesces or fails to object to the erroneous ruling at the time it was made.[5]

*Thompson v. Immigration and Naturalization Service*, 375 U.S. 384, 11 L.Ed.2d 404, 84 S.Ct. 397 (1964); *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 9 L.Ed.2d 261, 83 S.Ct. 283 (1962); *Needham v. White Laboratories*, 639 F.2d 394 (7th Cir. 1981); *Hernandez-Rivera v. Immigration and Naturalization Service*, 630 F.2d 1352 (9th Cir. 1980); Wright & Miller, *Federal Practice and Procedure: Civil* § 2812 & n. 51 (1973). Consequently, plaintiff's motion for a new trial will not be treated as timely for purposes of preserving the issues he raises in this appeal.

## II.

### Severance of Co-Defendants

Plaintiff Bowman and defendant Barnes claim the trial court erred in requiring separate trials of plaintiff's claims against the defendant Railroad and defendant Barnes. Plaintiff filed suit against the two defendants in a single complaint, alleging that the death of plaintiff's decedent was proximately caused by the negligence of either or

---

period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d), and (e), and 60(b), except to the extent and under the conditions stated in them."

[5] In adopting this rule, we do not overrule *Boggs v. Settle*, 150 W. Va. 330, 145 S.E.2d 446 (1965), and related cases, since in *Boggs* there had been no court intervention to extend time for the filing of the motion for new trial.

both defendants. Plaintiff and defendant Barnes assert that where the comparative negligence of the plaintiff is at issue, ordering separate trials for defendants in an action arising out of a single accident violates the comparative negligence principles of *Bradley v. Appalachian Power Co.*, 163 W. Va. 332, 256 S.E.2d 879 (1979). They maintain that a unitary trial is necessary under *Bradley* in order to determine the comparative negligence of the plaintiff in regard to all of the defendants.

The Railroad contends that under Rule 42(c) of the West Virginia Rules of Civil Procedure, the right to order separate trials rests within the sound discretion of the trial court, and that such discretion was properly exercised here. Our Rule 42(c), which is similar to Rule 42(b), Federal Rules of Civil Procedure, provides:

> "*Separate trials*—The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by Article III, Section 13 of the West Virginia Constitution or as given by a statute of this State."

It is generally acknowledged that a single trial lessens the delay, expense and inconvenience involved in separate trials, "and the courts have emphasized that separate trials should not be ordered unless such a disposition is clearly necessary." 5 *Moore's Federal Practice* § 42.03 (1981). As Moore points out, the matter ordinarily lies within the discretion of the trial judge.[6]

---

[6] At least one commentator has viewed the policy of trying multiple claims and parties in the same trial to be sufficiently strong that separate trials should be sparingly granted. *See* Note, 39 Minn. L. Rev. 743 (1955), where at 747, this statement is made:

"Only when virtually no duplication will result should a separate trial be granted merely because the claims are dissimilar, or the purpose of modern pleading to provide inexpensive trials will be

Our research has not disclosed any case where a court has had occasion to discuss the impact of comparative negligence on the procedural question of ordering separate trials as to joint tortfeasors. Dean Prosser, a leading tort commentator, has pointed out some of the problems in comparative negligence cases when less than all joint tortfeasors are included in the litigation. In *Comparative Negligence*, 51 Mich. L. Rev. 465, 503-504 (1953), he states:

> "Complications arise when apportionment involves multiple parties. Where, for example, the automobiles of two negligent drivers collide and injure the plaintiff, who is a bystander or a passenger in one of the cars, it is obvious that no complete and substantial justice can be done to the situation by any division of the damages between the plaintiff and one driver alone, in an action to which only those two are parties. There remain the problems of evaluation of the contributing fault of one who is not a party to the action, of the second suit against him in which the first is not res adjudicata and a new jury may come to a very different conclusion, and finally of contribution between the joint tortfeasors. *The only completely satisfactory method of dealing with the situation is to bring all the parties into court in a single action, to determine the damages sustained by each, and to require that each bear a proportion of the total loss according to his fault.*"[7] (Emphasis added)

---

defeated. It should also be kept in mind that one trial is generally cheaper than two, even when the claims require wholly different proof. The presumption should be in favor of a single trial." (Footnotes omitted)

[7] Much the same sentiments are found in a more recent Comment, Hensley, *Multiple Party Litigation in Comparative Negligence: Incomplete Resolution of Joinder and Settlement Problems*, 32 S.W.L.J. 669, 679 (1978):

"Any attempt to compare percentage shares of total joinder situations with those made in separate suits is admittedly suspect. In addition, jury findings made in total joinder cases represent only an approximation of fault relationships. It is clear, however, that failure to consider negligence of all tortfeasors in a single suit will almost certainly result in incorrect and often inequitable allocations under comparative negligence. Be

The comparative negligence rule set forth in *Bradley, supra,* is designed to ascertain a plaintiff's degree of contributory negligence as it relates to all of the defendants. As Prosser points out, this can be effectively accomplished only if all defendants are tried in a unitary action. It is for this reason that we stressed in *Bradley* the case of *Haynes v. City of Nitro,* 161 W. Va. 230, 240 S.E.2d 544 (1977), which established an inchoate right of contribution between joint tortfeasors, thereby permitting a defendant to implead a joint tortfeasor under Rule 14(a), R.C.P.

The main purpose for our liberal rules on joinder of parties and claims[8] is to enable parties to settle all matters in one action, which prevents a multiplicity of suits and reduces litigation, delay and expense. *Cf. State ex rel. Bank of Ripley v. Thompson,* 149 W. Va. 183, 139 S.E.2d 267 (1964). Both justice and judicial economy are served by this policy.[9]

Even absent the compelling overlay of the comparative negligence principle, the federal courts have expressed the view that separate trials should not be ordered. In *Russell v. City Ice and Fuel Co.,* 539 F.2d 1318 (4th Cir. 1976), the Fourth Circuit held the district court had abused its discretion in ordering separate trials. The plaintiff had sued two joint tortfeasors, one of whom cross-claimed the other on an indemnity claim. The district court ordered that the three claims be separately tried. In reversing, the court stated:

> "[S]uch bifurcation of closely related cases clearly is wasteful of judicial resources and carries with it a high potential for inconsistent results, and the inconsistencies can compound miscarriages of justice." 539 F.2d 1320.

cause the nonjoinder of a potential party affects and may prejudice the rights of all other parties in any lawsuit, the presence of all possible parties is essential for a fair resolution of claims in a comparative negligence action." (Footnotes omitted)

[8] Rules 13, 14, 18 thru 24, R.C.P.

[9] Wright, *Joinder of Claims and Parties Under Modern Pleading Rules,* 36 Minn. L. Rev. 580 (1952), elaborates more fully on the merits of joinder under the modern rules of civil procedure.

*See also Franchi Construction Co. v. Combined Insurance Company,* 580 F.2d 1 (1st Cir. 1978); *Richardson v. Communications Workers,* 530 F.2d 126 (8th Cir. 1976), *cert. denied,* 429 U.S. 824, 50 L.Ed.2d 86, 97 S.Ct. 77; *United States Air Lines, Inc. v. Wiener,* 286 F.2d 302 (9th Cir. 1961), *cert. denied,* 366 U.S. 924, 6 L.Ed.2d 384, 81 S.Ct. 1352.

There may be those rare instances where, because of the complexity of the issues, a court may be warranted in ordering separate trials as to joint tortfeasors. However, the case before us certainly does not present such an occasion.

Therefore, we conclude that Rule 43(c), R.C.P., which permits separate trials of multiple defendants, must be considered in light of the general policy of our joinder rules, which are designed to promote consolidation of issues and parties in a single trial to save expense and encourage judicial economy. Such rule should also be interpreted with regard to our comparative negligence doctrine, which is designed to compare plaintiff's contributory negligence to the negligence of all parties involved in the accident and litigation. Applying this rule to the present case, it was error for the trial court to sever the defendant Barnes from the case.

### III.

### *Absent Party's Role in Comparative Negligence*

A somewhat related issue is plaintiff's argument that the trial court's instruction concerning plaintiff's contributory negligence was confined to the parties to the litigation, and did not extend to all the parties to the accident. Apparently, Syllabus Point 3 of *Bradley,*[10] has engendered some confusion, in particular, as to whether plaintiff's total contributory negligence is determined, not only with regard to the parties actually in the litigation, but with

---

[10] Syllabus Point 3 of *Bradley* states:

"A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident."

regard as well as those who, while not parties to the litigation, were parties to the accident.[11]

The problem of whether persons not parties to the litigation but parties to the accident should be considered in ascertaining plaintiff's total contributory negligence has not received a great deal of discussion.[12] In the five other states[13] that have judicially abolished contributory

---

[11] A. Emch, *Comparative Negligence in West Virginia: A Defense Overview*, 82 W. Va. L. Rev. 493, 503 (1980), states:
"*Bradley* certainly seems to contemplate that all parties will be involved in the apportionment. The decision does not say that the apportionment will be among the parties to the *lawsuit* but refers instead to 'the other parties involved in the *accident.*' " (Footnote omitted)

E. Buffa, *The Plaintiff's View of Comparative Negligence*, 82 W. Va. L. Rev. 523, 528 (1980), states:
"A question which arises in consideration of multiple defendants is whether the apportionment of fault by the jury will include the negligence of absent tortfeasors or only the negligence of the parties to the action. It has been suggested that unsued tortfeasors should be included in the apportionment of negligence based upon the *Bradley* language that the plaintiff's negligence should be compared to 'the other parties involved in the accident.' " (Footnote omitted)

[12] Commentators are not in agreement as to whether an absent party should be considered in determining the total fault equation: Heft & Heft, *Comparative Negligence Manual*, § 8.131 (rev. ed. 1978), favors consideration of absent tortfeasors. Hensley, *Multiple Party Litigation in Comparative Negligence: Incomplete Resolution of Joinder and Settlement Problems*, 32 S. W. L. J. 669, 679 (1978), views the absent party as essential to a fair determination of all claims. Professor Fleming originally inclined to the view that the fault of absent parties to the litigation not be considered. Fleming, *Foreward: Comparative Negligence At Last—By Judicial Choice*, 64 Cal. L. Rev. 239, 257 (1976). This is also the view of Professor Wade in the *Uniform Comparative Fault Act*, 14 The Forum 379, 388-89 (1979). Professor Fleming recently commented on the problem of absent parties in *Report to Joint Committee of the California Legislature, etc.*, 30 Hast. L. J. 1465, 1493-94 (1979), and is now of the view that absent parties should be considered. However, Fleming's comments were confined to a pure no-fault context where the emphasis is on fault allocation to all parties.

[13] These states have adopted a pure no-fault standard, which permits a party to recover damages negligently inflicted to the extent that he is fault free. Damages are reduced by the percentage of fault found. *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975); *Li v. Yellow Cab*

negligence, only California has touched on this question, and then only by way of a footnote. In *American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 146 Cal. Rptr. 182, 578 P.2d 899 (1978), the court concluded that plaintiff's degree of contributory negligence should be ascertained by looking to all parties to the accident, not just those in the litigation.[14]

In other jurisdictions, the question has arisen in the context of a comparative negligence statute. For example, in *Board of County Commissioners v. Ridenour*, 623 P.2d 1174 (Wyo. 1981), recovery was permitted by statute "if such negligence (of the plaintiff) was not as great as the negligence of the person against whom recovery is sought." 623 P.2d at 1180. Despite the fact that the phrase "person against whom recovery is sought" would suggest only a party to the litigation, the court held that the statute meant all parties to the occurrence. The Wyoming court acknowledged that its statutory language was similar to Wisconsin and relied upon the Wisconsin case of *Walker v. Kroger Grocery & Baking Co.*, 214 Wis. 519, 252 N.W., 721, 727-28 (1934), which has consistently been reaffirmed by the Wisconsin Supreme Court. *See Reiter v. Dyken*, 95

---

*Co.*, 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975); *Hoffman v. Jones*, 280 So.2d 431 (Fla. 1973); *Alvis v. Ribar*, 421 N.E.2d 886 (Ill. 1981); *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979).

[14] The language from *American Motorcycle Association, supra,* is: "The California BAJI Committee, which specifically addressed this issue after *Li,* concluded that 'the contributory negligence of the plaintiff must be proportioned to the combined negligence of plaintiff and of all the tortfeasors, whether or not joined as parties . . . whose negligence proximately caused or contributed to plaintiff's injury.' (Use note, BAJI No. 14.90 (5th ed. 1975 pocket pt.) p. 152.)

"We agree with this conclusion, which finds support in decisions from other comparative negligence jurisdictions. (See, e.g., *Pierringer v. Hoger* (1963) 21 Wis.2d 182, 124 N.W.2d 106; *Walker v. Kroger Grocery & Baking Co.* (1934) 214 Wis. 519, 252 N.W. 721, 727-728.) In determining to what degree the injury was due to the fault of the plaintiff, it is logically essential that the plaintiff's negligence be weighed against the combined total of all other causative negligence; . . ." 578 P.2d at 906.

Wis.2d 461, 290 N.W.2d 510 (1980); *Soczka v. Rechner,* 73 Wis.2d 157, 242 N.W.2d 910 (1976). *See also Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978); *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963).

Obviously, some problems of proof can arise, if in the determination of the plaintiff's total contributory negligence, the role of an absent party can be considered. It is possible through the other parties, or independent witnesses, to establish some evidentiary basis of the absent tortfeasor's role and the plaintiff's possible contributory negligence in regard to it. However, this factual development may well lack the vigor and clarity which would be present if the absent party were actually in the litigation.

In this jurisdiction, as a result of a defendant's ability under *Haynes, supra,* to bring in absent joint tortfeasors, both plaintiffs and defendants now have a large measure of control over who is a party to the litigation. Moreover, one of the basic underpinnings of *Haynes* as noted in *Bradley* was "to moderate the inequity which existed in our law that enabled the plaintiff to cast the entire responsibility for an accident on one of several joint tortfeasors by deciding to sue only him." 256 S.E.2d at 886. Consequently, in the ordinary case, it might be expected that all parties to the accident will be parties to the litigation.

Undoubtedly, there may be situations where the absent party cannot be brought into the suit, either because the party is beyond the court's jurisdiction, or has the benefit of some immunity, such as governmental immunity, or the benefit of the employer's defense of workmen's compensation. In these situations, it would appear to be unfair to preclude a consideration of the plaintiff's contributory negligence in regard to this absent party. To parallel the *Haynes'* rationale, the plaintiff should not be able to diminish his own contributory negligence by the inability to bring a particular party into the litigation.

*Bradley* recognized that the rule which completely barred a plaintiff's recovery because of his contributory

negligence was unduly harsh. The doctrine of contributory negligence was retained in *Bradley* to the extent that plaintiff's recovery is barred if his negligence or fault is "equal [to] or exceed[s] the combined negligence or fault of the other parties involved in the accident." Syllabus Point 3, in part, *Bradley, supra*. The fundamental premise of *Bradley* was that the judicially-created bar of contributory negligence was too harsh but that the common law concept of contributory negligence in the tort law should not be completely abandoned so "that where a party substantially contributes to his own damages, he should not be permitted to recover for any part of them." 256 S.E.2d at 885.

We also stressed in *Bradley* that the calculation of the plaintiff's contributory negligence began with the assessment "that the sum of the negligence of all the parties to a given accident cannot exceed 100 per cent." 256 S.E.2d at 885. For the foregoing reasons, we hold that in order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascertained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants involved in the litigation. Therefore, the trial court's instructions were erroneous to the extent they confined the plaintiff's contributory negligence comparison to the defendant Railroad only.

## IV.

### Evidentiary Errors

### A.

Because of the prospect of a new trial, other assignments of error which are likely to recur warrant some discussion. First, plaintiff argues that the decedent's characteristics and habits are relevant to a consideration of the decedent's future earning capacity as a factor in assessing the pecuniary loss from his wrongful death and that the trial court erred in denying decedent's family the right to testify concerning such characteristics and habits.

In our early decision of *Yeater v. Jennings Oil Co.*, 75 W. Va. 346, 349, 84 S.E. 904, 905 (1914), we approved a jury instruction directing that the jury may determine the probable earnings of the deceased in a wrongful death action by "considering his age, earning capacity, experience and *habits*, during his probable lifetime and the life time of his father. . . ." (Emphasis added)

Although we have not had occasion to discuss this issue recently, we have discussed the issue of pecuniary loss and other damage issues in a wrongful death action in *Bond v. City of Huntington*, ___ W. Va. ___, 276 S.E.2d 539 (1981). We stated in Syllabus Point 1 of *Bond* with regard to our wrongful death statute that "this Court has adopted a liberal construction of the statute from our earliest cases." The admissibility of personal characteristics and habits, as indicated in *Yeater*, is widely acknowledged in other jurisdictions. *Merchants National Bank & Trust Co. v. United States*, 272 F. Supp. 409 (S.E.D. N.D. 1967); *Kemp v. Pinal County*, 8 Ariz. App. 41, 442 P.2d 864 (1968); *Perez v. American Mutual Insurance Company*, 288 So.2d 541 (Fla. App. 1973); *Atlantic Coast Line R. Co. v. Daugherty*, 116 Ga. App. 438, 157 S.E.2d 880 (1967); *Schmitt v. Jenkins Truck Lines*, 170 N.W.2d 632 (Iowa 1969); *Empire Metal Corp. v. Wohlwender*, 445 S.W.2d 685 (Ky. 1969); *Grothe v. St Louis-San Francisco Ry. Co.*, 460 S.W.2d 711 (Mo. 1970); *Allen v. Riedel*, 425 S.W.2d 665 (Tex. Civ. App. 1968); *Gamble v. Hill*, 208 Va. 171, 156 S.E.2d 888 (1967).

## B.

Plaintiff claims the trial court erred in refusing to permit testimony from two expert witnesses offered on behalf of the plaintiff regarding the hazardous nature of the crossing and the inadequacy of the Railroad's warning sign. The first expert was a state highway department engineer who had inspected the crossing more than two years prior to the accident. The second was a civil engineer who inspected the crossing two-and-a-half years after the accident. Upon the court's refusal to permit them to testify before the jury, their testimony was vouched into the record.

The transcript of the experts' testimony and the discussion surrounding admissibility has not been included in the record on appeal.[15] The briefs of the plaintiff and defendant are unclear as to whether the experts were testifying regarding the scene at the time of the accident or at the time of their inspections, and whether the condition of the crossing was substantially unchanged between the time of the inspections and the time of the accident.

When a significant period of time has elapsed between the time of an accident and an examination of the scene of the accident by an expert witness, a prerequisite to the admissibility of the results of the examination is testimony that the relevant aspects of the accident scene were unchanged. *Champion v. Knasiak*, 25 Ill. App.3d 192, 323 N.E.2d 62 (1974); *Lowe v. McMurray*, 412 S.W.2d 571 (Ky. 1967); *Sheets v. Davenport*, 181 Neb. 621, 150 N.W.2d 224 (1967); *Neider v. Spoehr*, 41 Wis.2d 610, 165 N.W.2d 171 (1969). We have expressed much the same rule with regard to test results where we require that "in order for evidence of tests or experiments to be admissible, the essential conditions at the time of the experiment must be substantially similar to those existing under the occurrence, but it is not essential that the conditions be identical in every respect." Syllabus Point 6, in part, *Spurlin v. Nardo*, 145 W. Va. 408, 114 S.E.2d 913 (1960).

---

[15] In his initial petition for appeal, the plaintiff utilized the procedure set forth in Rule 4A of the Rules of Appellate Procedure, Vol. 1, W. Va. Code p. 69, 70 (Cum. Supp. 1981), which permits statement of facts in the petition to serve in place of the transcript of testimony. Rule 4A requires the petition to be served on the other parties who can then file a reply petition. However, once an appeal is granted, Rule 8 of the Rules of Appellate Procedure, Vol. 1, W. Va. Code, p. 72, 73 (Cum. Supp. 1981), requires the development of an adequate appeal record by both parties. This also accords with the requirement of W. Va. Code, 58-5-6. In the present case, we do not have a transcript of the testimony taken at trial. All parties to the appeal have proceeded to present the key facts surrounding the accident by narrative statements in their briefs. Where their respective statements do not appear to be in dispute, we have addressed the points of error raised. In so doing, counsel should not assume that we will in the future sanction this practice.

In the absence of a complete record on this point, we are unable to review the propriety of the trial court's ruling. On remand, the question of admissibility will hinge on the presence of a proper foundation of substantially similar conditions at the time of the inspections and the time of the accident.

## C.

Thirty minutes after the accident occurred, a State policeman arrived at the scene and began an investigation of the accident. Fourteen minutes later, forty-four minutes after the accident occurred, the policeman obtained a written statement describing the occurrence from Paul Dorsey, the operator of the locomotive. Over the objection of the plaintiff, this statement was introduced at trial because Mr. Dorsey had died prior to trial. On appeal, the plaintiff argues that the trial court's admission of this statement under the spontaneous declaration or *res gestae* exception to the hearsay rule was erroneous in that it was obtained too long after the occurrence and was a product of deliberation.

We have frequently addressed the admissibility of spontaneous declarations. In Syllabus Point 2 of our latest case, *State v. Young*, ___ W. Va. ___, 273 S.E.2d 592 (1980), we adopted a six factor test that had been discussed in *Ward v. Raleigh County Park Board*, 143 W. Va. 931, 937, 105 S.E.2d 881, 885 (1958):

> "An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the dec-

laration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

*See also Lawrence v. Nelson,* 145 W. Va. 134, 143-44, 113 S.E.2d 241, 248 (1960); *Jones v. Ambrose,* 128 W. Va. 715, 38 S.E.2d 263 (1946); *Collins v. Equitable Life Insurance Company,* 122 W. Va. 171, 8 S.E.2d 825 (1940); *Blagg v. Railroad Co.,* 83 W. Va. 449, 98 S.E. 526 (1919); *Hawker v. B & O R. Co.,* 15 W. Va. 628 (1879); *McCormick's Handbook on Law of Evidence* § 297 (2d ed. 1972).

In the present case, the statement in issue cannot meet factors four and five. The statement was not the product of a "spontaneous or instinctive utterance of thought," but was a response to a police investigation and was taken down in writing. Consequently, the statement appears to be a "product of premeditation, reflection or design." Moreover, the approximate 45 minutes interval in time between the accident and the taking of the statement clearly suggests it was the result of some deliberation and not spontaneous. For these reasons, we conclude the statement should not have been admitted.[16]

---

[16] Plaintiff assigns certain instructional errors, one of which related to a claim that the crossing was extrahazardous and, consequently, the Railroad had a higher degree of care. We have recognized this principle in *Pierce v. B & O Railroad Co.,* 99 W. Va. 313, 128 S.E. 832 (1935), and Syllabus Point 3 of *Krodel v. Baltimore & Ohio Railroad Co.,* 99 W. Va. 375, 128 S.E. 824 (1925). Other courts have adopted a similar rule. *E.g., Chicago, Rock Island & Pacific Railroad Co. v. Gray,* 248 Ark. 640, 453 S.W.2d 54 (1970); *Kuper v. Chicago & North Western Transp. Co.,* 290 N.W.2d 903 (Iowa 1980); *Sargent v. Southern Pacific Transportation Company,* 264 Ore. 435, 504 P.2d 729 (1972); *Buchecker v. Reading Co.,* 412 A.2d 147 (Pa. 1979); *Missouri Pacific R. Co. v. Cooper,* 563 S.W.2d 233 (Tex. 1978), *overruling,* 547 S.W.2d 723 (1977); 65 Am.Jur.2d *Railroad* §477 (1972). However, because there is no evidentiary transcript, we are unable to say if the instruction was warranted based on facts developed at trial.

For the foregoing reasons, we reverse the judgment of the circuit court and remand the case for a new trial.

*Reversed and remanded.*