Fred L. SINDONI and Betty Sindoni, Plaintiffs,

v.

CONSOLIDATED RAIL CORPORATION, Schneider National Carriers, Inc., and Edward Brown, Defendants.

No. 3:CV–95–0518.

United States District Court, M.D. Pennsylvania.

Sept. 23, 1996.

Christopher Thomas Powell, Jr., Scranton, PA, Alan D. Voos, Michael H. Doran, Michael H. Doran & Associates, Buffalo, NY, for Plaintiffs.

Maria Stumpo Rosmini, Mark D. Mazza, Jack Emas & Associates, Philadelphia, PA, For Defendants.

## MEMORANDUM

KOSIK, District Judge.

Before this court is a motion for summary judgment by Defendant Consolidated Rail Corporation (Conrail). Defendant Conrail contends that there exists no genuine issue of a material fact as it pertains to a violation of the Federal Employee Liability Act (FELA). We agree.

### I. BACKGROUND

At relevant times, Plaintiff was an engineer for Defendant Conrail. On the night of January 8, 1994, Plaintiff was operating a Conrail train through Tunkhannock, Pennsylvania. The train consisted of four locomotives pulling 114 cars, 103 of the cars were loaded and eleven were empty. The railroad tracks and the roadways were snowcovered as a result of a recent snowfall.

At some point during the same night, Defendant Edward Brown was operating a truck in Tunkhannock at the direction of Defendant Schneider National Carriers, Inc. (Schneider). Defendant Brown's passenger was an employee of Defendant Schneider named William Stambaugh. After missing a turn, Defendant Brown attempted to turn his tractor trailer around. Defendant Brown attempted to turn the truck to proceed up Warren Street which intersected with the applicable railroad crossing. Plaintiff's first attempt to turn the truck around failed prior to the truck's reaching the point of intersection as a result of the snow-covered road. Defendant Brown attempted another turn with similar results. On the third attempt, Defendant Brown was able to partially negotiate the turn prior to his truck becoming disabled in a snow drift on the side of the road. On this attempt, Defendant Brown breached the railway intersection and lodged the truck's tandem wheels on the tracks.

A bystander with a four-wheel drive vehicle attempted to extract the tractor trailer from the tracks by attaching chains to the truck and the vehicle. This was unsuccessful. At some point, another person arrived who also attempted to clear the truck from the railway. These attempts of pushing/pulling and applying cinders also did not work. Just after the truck became disabled during the third attempt, two police officers from Tunkhannock Borough arrived on the scene. Minutes after arriving, Officer Edwards contacted the Wyoming County Communication Center (WCCC) to notify them of the obstruction and to direct them to call Conrail. The truck was blocking the railway for less than ten minutes when the train Plaintiff was operating was observed by Defendant Brown, Stambaugh, the two volunteers, and the police officers.

Plaintiff was unaware of the hazard on the tracks until he visually observed the stranded truck. Plaintiff was hindered from observing the stranded truck until the train was within 200 to 300 yards from the truck. Plaintiff immediately implemented an "emergency" in an attempt to stop the train prior to impact. As part of this emergency procedure, Plaintiff assumed a position on the floor of the train, face down, to avoid any debris which may be propelled through the windshield at the point of impact. The train collided with the truck around 10:50 p.m. Plaintiff alleges that the impact caused Plaintiff to topple forward and strike the control console. Plaintiff Fred Sindoni alleges a shoulder and neck injury. Plaintiff Betty Sindoni sets forth an action for loss of consortium.

Plaintiffs filed this action on April 4, 1995, pursuant to FELA, 45 U.S.C. § 51 et seq. and several state law claims. Plaintiff Fred Sindoni exclusively raises claims brought pursuant to FELA against Defendant Conrail. The court construes Plaintiff Fred Sindoni's claims against Conrail as including the following: failure to warn Plaintiff of the obstruction; failure to provide a crashworthy

train; failure to properly train Plaintiff on how to survive a crash; and failure to comply with internal operating procedures concerning limitations on the load in cold weather. The parties have filed various crossclaims.[1]

Defendant Conrail filed a motion for summary judgment on January 10, 1996. *See* Document 21. Plaintiff opposed the motion except to the crashworthy claim. Defendants Schneider and Brown opposes the motion as it pertains to the crashworthiness claim.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure states:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]

The Supreme Court has held that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Gile v. Optical Radiation Corp.,* 22 F.3d 540, 541 (3d Cir.), *cert. denied,* 513 U.S. 965, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994).

Initially, to support its motion for summary judgment, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex,* 477 U.S. at 322–

23, 106 S.Ct. 2548. Once the moving party has satisfied its burden, the non-moving party must present "affirmative evidence" to defeat the motion for summary judgment, consisting of verified or documented materials. *See Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990); *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. This affirmative evidence must be sufficient as to each of the nonmoving party's essential elements of his case upon which he bears the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. This includes situations in which such affirmative evidence is likely to be in the exclusive control of the moving party, as long as the nonmoving party has possessed the opportunity to conduct sufficient discovery. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Accordingly, mere conclusory allegations or denials taken from the pleadings are insufficient to repel summary judgment. *Schoch v. First Fidelity,* 912 F.2d 654, 657 (3d Cir.1990) (citations omitted). In evaluating a motion for summary judgment, the entire record must be examined in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences derived from the evidence. *Torre v. Casio, Inc.,* 42 F.3d 825, 830 (3d Cir.1994); *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

In addition to the traditional standard of review articulated above, FELA demands a more stringent approach to the granting of summary judgment in actions brought pursuant to its provisions. In quoting the Supreme Court, the Third Circuit has stated:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest,* in producing the injury or death for which damages are sought. *It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes,* includ-

---

1. Defendant Conrail filed a crossclaim against Defendant Schneider and Defendant Brown. *See* Document 5. Defendant Brown filed a crossclaim against Defendant Conrail. *See* Document 14.

2. Fed.R.Civ.P. 56.

ing the employee's contributory negligence.

Pehowic v. Erie Lackawanna Railroad Company, 430 F.2d 697, 699 (3d Cir.1970) (quoting Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).

Accordingly, the Third Circuit has articulated that a liberal construction favoring the plaintiff must be given to the act. Id.

■ The district court is "justified in withdrawing such issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of the employee." Id. 430 F.2d at 700. The ultimate question is whether a fair-minded jury could reach the conclusion that the employer was negligent in whole or in part. See Rogers, 352 U.S. at 508, 77 S.Ct. 443. Despite the mandated liberal approach to FELA, the "party with the burden of proof must [still] present probative facts from which the negligence and causal relation [can] reasonably be inferred." Dessi v. Pennsylvania Railroad Company, 251 F.2d 149, 151 (3d Cir.) (internal quotation marks omitted), cert. denied, 356 U.S. 967, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958); see also Sano v. Pennsylvania Railroad Co., 282 F.2d 936, 939 (3d Cir.1960).

## III. DISCUSSION

### A. Consortium

■ As a preliminary matter, we address Defendant Conrail's statement that Plaintiff Betty Sindoni cannot recover pursuant to FELA for loss of consortium. See Document 21 at 1 n.1.[3] We agree that there exists no right to recover for loss of consortium when the underlying claim is brought pursuant to FELA. See Quitmeyer v. Southeastern Pennsylvania Transportation Authority, 740 F.Supp. 363, 370 (E.D.Pa.1990).

### B. FELA

FELA provides:

Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

■ A cause of action brought pursuant to FELA must demonstrate the common law principles of negligence. See Illinois Cent. R. Co. v. Skaggs, 240 U.S. 66, 36 S.Ct. 249, 60 L.Ed. 528 (1916); Gottshall v. Consolidated Rail Corp., 988 F.2d 355, 374 (3d Cir.1993), rev'd on other grounds, 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Therefore, Plaintiff must show that Defendant Conrail had a duty, that Conrail breached that duty, and that this breach was causally related to the plaintiff's injuries.

### 1. Failure to Warn Plaintiff of Impending Collision

■ Plaintiff Fred Sindoni's first claim for relief is that Defendant Conrail failed to warn Plaintiff that the railway was obstructed by a disabled tractor trailer. Plaintiff alleges that Defendant Conrail knew of the obstruction in time to warn Plaintiff and to avert the collision. The issue involved in this allegation is that Defendant Conrail had a duty, as a result of Defendant Conrail's knowledge of the truck on the railway, and that they breached that duty by not warning Plaintiff of the impending danger.

Defendant Conrail opposes the assertion arguing that, at best, Conrail had been notified of the obstruction less than one minute prior to impact. Therefore, Defendant Conrail argues that, in the absence of any evidence by Plaintiff that such a brief period of time was sufficient to notify the train to stop, that it did not breach a duty to warn Plaintiff.

---

3. The Complaint does not specifically set forth a claim on behalf of Betty Sindoni against Defendant Conrail.

As announced above, our inquiry on summary judgment is liberal favoring Plaintiff. Only if we can conclude from affirmative evidence set forth by Plaintiff that a fair-minded jury could find a zero chance of negligence in whole or in part on the part of Defendant Conrail, can we grant summary judgment as to this claim. · However, our inquiry must be guided by reason. *See Pehowic*, 430 F.2d at 699.

In seeking to oppose summary judgment, Plaintiff asserts that Defendant Conrail might have known of the obstruction up to one hour prior to the collision. Such notice provided ample time to locate the applicable train and communicate with the engineer concerning the possible obstruction. Plaintiff points to the deposition of Donald Hollister, brakeman, to support this contention. Hollister stated, "There was a bunch of people back there and we were milling around. The lady police officer ... wanted to know why we didn't stop, they had notified Conrail 30 minutes prior to this accident." Document 25, Exhibit F at 20. In addition, Plaintiff notes that Wells during his deposition stated, "Well, there was somebody there that said that we should have known that that truck was on the crossing, it had been there for thirty minutes.... [T]hey said that I should have known that that truck was on the crossing, we let them know 30 minutes ago." Document 25, Exhibit G at 13.

In moving for summary judgment on this count, Defendant Conrail lays out a detailed time line. The timeline is as follows:

1) 10:49:00 p.m.—two Borough of Tunkhannock police officers arrive at the scene;

2) 10:50:00 p.m.—Officer Edwards advises Wyoming County Control Center (WCCC) to contact Conrail and advise them of the obstruction on the railway;

3) 10:51:00 p.m.—WCCC calls Conrail;

4) 10:51:50 p.m.—WCCC/Conrail telephone call concludes; and

5) 10:52:10 p.m.—Officer Edwards advises WCCC that train struck the truck.

This timeline is confirmed by the WCCC radio/telephone recording system. *See* Document 25, Exhibit L.

The court's review of the Record confirms that there exists no genuine issue as to a material fact that Conrail had notice of the obstruction within a period of time in which they could have warned the train operated by Plaintiff. For example, Defendant Brown stated that the truck was actually stuck on the track only for three or four minutes prior to impact. *See* Document 23, Exhibit D at 28–29, 32, 60, 85. In addition, Defendant Brown stated that between the time the police arrived and the time of the accident only three or four minutes had expired. *See id.* at 32. Defendant Brown also stated that if he had been stuck on the tracks for over ten minutes, he would have complied with Department of Transportation rules requiring that a disabled truck display orange triangles or flares. *See id.* at 63.

What Plaintiff would cite as a genuine issue of material fact is simply a misunderstanding concerning the facts. It is generally accepted that the tractor trailer may have been operating in the Warren Street and railroad crossing area for over thirty minutes in an attempt to turn around. However, there exists no genuine controversy concerning Defendant Brown's statement that the truck was actually impeding the tracks for less than five minutes. The truck, in attempting to turn around, did become imperiled by the snow for a lengthy period of time, but this imperil did not expose the truck to a collision with a train except for the period commencing five minutes prior to impact.[4] The testimony set forth by Plaintiff to raise a genuine issue of material fact either is too vague an assertion to defeat a motion for summary judgment or testimony that would be inadmissible at trial. It was Plaintiff's burden to point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law. *Williams v. Borough of West Chester*, 891 F.2d 458, 466, & n.12 (3d Cir.1989). For example, Hollister's statement is classic hear-

---

**4.** *See* Document 23, Exhibit D at 70–76. Brown stated in his deposition that in attempting to turn the truck around he only obstructed the track on

his last attempt prior to the collision. *See id.,* Exhibit D at 60.

say.[5] Plaintiff also did not provide any evidence concerning that vague assertion that "we notified Conrail thirty minutes ago." Plaintiff also relies on a statement by Steve Bonczek who attempted to extract the truck. *See* Document 25 at 11. Plaintiff cites Bonczek's statement of "Maybe an hour, hour and fifteen minutes" as raising a genuine issue as to the time the truck was stuck on the tracks. However, Bonczek's statement was in response to the question of how much time expired between the time he first saw the truck in the area until impact. *See* Document 25, Exhibit H at 32. The record is clear that neither Tunkhannock Police nor WCCC had advance notice of the obstruction prior to Officer Edwards' radio transmission to WCCC.[6] Plaintiff has not provided the court with any indication to support Hollister's and Well's statement as to who was notified and by whom.[7] Besides these assertions based on hearsay that is incapable of being transformed into admissible evidence at trial, the Record reveals no such advance notification. In addition, Plaintiff failed to provide any affirmative evidence of how much time Defendant Conrail would have needed to notify the train and for the train to stop.

In granting summary judgment as to this claim, the court is not deciding that it is more likely than not that Defendant Conrail did not receive any notice in excess of one minute prior to the collision, as Plaintiff would argue asserting the liberal construction of FELA. In granting the motion, the court is determining that Plaintiff has failed to put forth affirmative evidence, beyond a mere scintilla, that raises a genuine issue as to the material fact. *See Williams*, 891 F.2d at 460. Discovery has been completed, so Plaintiff had the opportunity to obtain evidence that Defendant Conrail had notice in excess of one minute prior to the accident.

### 2. Crashworthiness

■ Plaintiff's initial documents, including the Complaint and answers to interrogatories, indicated that Plaintiff sought to pursue a claim pursuant to FELA for Defendant Conrail's negligence in failing to equip the train with devices making it crashworthy. For example, Plaintiff indicates that seat belts, airbags, and cushioning on the control column would have prevented, or at least diminished, his injuries. *See* Document 23, Exhibit A at 50–51.

Defendant Conrail moved for summary judgment as to this claim arguing that the train was equipped with all federally mandated equipment and that the omission from the train of nonrequired, experimental devices, such as airbags, is not actionable pursuant to FELA. Plaintiff failed to respond to this aspect of Defendant Conrail's motion.[8] In accordance with Local Rule 7.6, we deem such a motion unopposed. Although deemed unopposed, we are still mandated to consider whether the granting of the motion is appropriate. *See Anchorage Associates v. V.I. Bd.*

---

5. The court notes that although evidence adduced at summary judgment may be inadmissible, i.e. hearsay, it should be considered if the evidence produced in opposing the motion could later be presented in a form that would be admissible at trial. *See Williams*, 891 F.2d at 466 n. 12. However, the evidence sought to be adduced in this matter is not the type of inadmissible evidence that the *Williams* court was speaking of. This is not the situation in which the affiant could be presented at trial and provide direct testimony. It is also noted that this statement is specifically contradicted by Officer Edward's own testimony, the depositions of the two employees of WCCC, and the radio/telephone transcripts of WCCC.

6. *See* Document 23, Exhibit F at 11–12 (WCCC dispatcher testifying that the first communication about the truck was from Officer Edwards); *id.*, Exhibit F, Exhibit 1 (WCCC transcript); Document 25, Exhibit I at 36 (Stambaugh testifying that he did not notify anyone of the obstruction); Document 25, Exhibit K at 10–13 (Freed stating that she did not receive any telephone calls about the truck prior to Officer Edwards radio communication); Document 28, Exhibit A (Bonczek stating that he did not attempt to contact anyone concerning the truck).

7. Plaintiff states that a dispatcher informed him after the accident that Conrail was not notified about the truck until after the accident had already occurred or "about to or a couple minutes before or whatever." Document 23, Exhibit A at 77–78; *see also id.* at 100–101. Plaintiff also stated that he did not have knowledge as to whether Defendant Conrail had advance notice. *See id.* at 78–79.

8. Defendants Schneider and Brown oppose the motion for summary judgment as it pertains to this claim. *See* Document 24.

*of Tax Review,* 922 F.2d 168 (3d Cir.1990). In such a case, granting an unopposed summary judgment motion is appropriate when the court "has determined the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.* at 175.

The Record reveals no dispute that Defendant Conrail was not required to provide methods or equipment beyond that supplied on the applicable train. Plaintiff's claim asserts that nonrequired equipment could have prevented his injuries. In opposing this motion, Defendants Schneider and Brown assert that the federal regulations do not preempt state law claims. We need not discuss the merit of such an argument, because the crashworthiness claim is brought pursuant to a federal statute. There is no state claim pursuant to the crashworthiness claim. In finding no genuine issue of material fact indicating that Defendant Conrail had a duty to install seatbelts, airbags, or padding, we grant Defendant Conrail's motion for summary judgment as it pertains to this claim.

### 3. Conrail Inclement Weather Car Limit Policy

At the time of the accident, Defendant Conrail had in effect an internal rule concerning the number of railcars to be attached to a locomotive upon dispatch in below freezing weather. Plaintiff contends that Defendant Conrail violated its internal policy as evidenced by the 114 railcars (103 loaded, 11 empty) attached to the train when the policy would have permitted eighty-five. Plaintiff's claim is that if Defendant Conrail had complied with its policy the accident would not have occurred. Implicit in this argument, is that if the train was transporting the eighty-five railcars as provided in the

guidelines for the temperature of ten degrees (the temperature at the time of the accident) the accident would not have occurred.[9] Plaintiff's claim thus suggests that Defendant Conrail breached a duty of care in violating its internal procedures.

This argument has several flaws. First, Plaintiff has failed to present affirmative evidence concerning the temperature at the time of "dispatch," the relevant time. The train was dispatched at 1:30 p.m. The accident occurred around 10:50 p.m., over nine hours later. Plaintiff contends that the temperature at the time of the accident was ten degrees, thus mandating a maximum load of eighty-five railcars.[10] If the temperature was twenty degrees at time of dispatch, the policy would have restricted the load to a maximum of 125 railcars. The difference of ten degrees, nine hours before the occurrence, affects whether Defendant Conrail exercised or breached its duty of care. Therefore Plaintiff needed to supplement the record with evidence of the temperature at the time of dispatch. Plaintiff failed to provide this and therefore failed to show that Defendant Conrail breached a duty of care.

Plaintiff also contends that Defendant Conrail was negligent in establishing the inclement weather policy. *See* Document 25 at 8. Plaintiff contends that "the limits themselves were excessive to provide safe stopping distance thereby avoiding the accident in this matter." *Id.* Plaintiff's showing that Defendant Conrail's inclement weather policy was negligently promulgated would have demonstrated an actionable FELA cause of action. However, Plaintiff failed to meet his burden in this summary judgment motion by failing to come forward with affirmative evidence suggesting the policy was inadequate.[11] The

9. The court notes that the internal policy provides that for temperatures between zero and ten degrees, eighty-five railcars were recommended and that for temperatures of ten to twenty degrees, one hundred railcars were permitted. *See* Document 25, Exhibit D. Using the ten degree temperature, the policy provides that either eighty-five to one hundred railcars could be transported.

10. As previously noted, the court notes that the policy is unclear as to whether ten degrees warranted a limit of eighty-five or one hundred railcars.

11. The Record suggests that the size of the load was not drastically disproportionate to the size of the load that could have been stopped prior to impact. Plaintiff stated that only the four locomotives (60 feet in length) and a couple cars proceeded through the intersection. *See* Document 23, Exhibit A at 93, 94. Hollister stated that thirteen through fifteen railcars passed

mere, unsupported assertion in an opposition brief that the policy was negligently promulgated is inadequate to defeat Defendant Conrail's motion for summary judgment. *See Morrison*, 891 F.2d at 860.

Plaintiff's argument is also flawed in its failure to demonstrate causation. In Plaintiff's brief in opposition, Plaintiff contends that he is competent to render an opinion as to the maximum load that would have permitted Plaintiff to stop the train prior to impact. *See* Document 25 at 8. Plaintiff stated in his deposition that if he were pulling thirty to forty empty railcars, he would have been able to safely avoid the collision. *See* Document 23, Exhibit A at 49–50. If Defendant Conrail's policy mandated the maximum full load of eighty-five railcars for the weather conditions and Defendant Conrail had complied with this limit, the accident would still have occurred according to Plaintiff's own testimony. Therefore, Plaintiff has failed to raise a genuine issue of material fact as to causation.

In light of the above, we grant the motion for summary judgment as it pertains to this claim.

### 4. Failure to Instruct

■ Plaintiff raises in his opposition brief to the motion for summary judgment that Defendant Conrail failed to adequately instruct Plaintiff on procedures to be implemented by Plaintiff to protect himself in an imminent crash situation. *See* Document 25 at 14–15. Plaintiff admitted in his deposition that he was instructed to lie on the floor to avoid debris that was propelled through the windshield.[12] Plaintiff stated that "Because it's all glass on the front of the engines[,] . . . . our supervision tells us if you have any problems or you're going to hit, to get down on the floor. That's the safest place." Document 23, Exhibit A at 27–28. In addition, Plaintiff stated, "we were supposed to [lay on the floor]. That's what we were told to do." Document 25, Exhibit E at 28. Hollister stated in his deposition that he was instruct-

ed to never jump off the train when a collision is imminent. *See* Document 23, Exhibit B at 17–18.

Plaintiff asserts that Defendant Conrail was negligent in not providing more detailed instructions. However, Plaintiff has failed to provide any affirmative evidence suggesting that Defendant Conrail's instruction to lie down and not jump off the train were negligent. In a summary judgment proceeding, Plaintiff cannot rely on his pleadings and briefs alone. There must exist in the record some evidence that would create a genuine issue of material fact suggesting that Defendant Conrail was negligent. Plaintiff failed to meet this burden. Accordingly, we grant the motion for summary judgment as it pertains to this claim.

### IV. CONCLUSION

In sum, we find no genuine issue as to a material fact. We grant Defendant Conrail's motion for summary judgment.

---

through the intersection. *See* Document 23, Exhibit B at 18.

12. *See* Document 23, Exhibit A at 26. The record indicates that Plaintiff was confident in his decision to lie on the floor because prior to impact he communicated with Wells, who was in

another locomotive, "to get down because we were going to hit." *Id.* at 26; *see also id.,* Exhibit B at 13; *id.,* Exhibit C at 8. Hollister also apparently believed that lying on the floor provided an element of safety. *Id.* at 27 (Plaintiff testifying that Hollister was lying on the floor).