**THIRD DIVISION**
**MIKELL, P. J.,**
**ELLINGTON, C. J., and MILLER J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 16, 2012**

# In the Court of Appeals of Georgia

A12A0202. ZEAGLER v. NORFOLK SOUTHERN RAILWAY
COMPANY.

MIKELL, Presiding Judge.

William Zeagler brought this action pursuant to the Federal Employers'
Liability Act (FELA)[1] after he was injured in a grade-crossing collision, claiming,
inter alia, that Norfolk Southern Railway Co. was negligent in failing to provide him
with safety training. After a hearing,[2] the trial court granted Norfolk Southern's
motion for summary judgment and Zeagler appeals. For the reasons that follow, we
reverse.

---

[1] 45 U.S.C.A. § 51 et seq.

[2] The transcript of the hearing is not in the record before us.

"Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant of a motion for summary judgment, we apply a de novo standard of review."[3]

Viewing the evidence and all reasonable conclusions and inferences draw from it in the light most favorable to Zeagler as the nonmoving party,[4] the record shows that while working as a conductor on a Norfolk Southern train, Zeagler sustained serious injuries when a logging truck pulled onto the tracks in front of his train, causing a collision. The engineer shot the emergency brake, but could not avoid the collision. A Norfolk Southern "Personal Injury Report" filled out the day of the accident and signed by Zeagler says, "When our Locomotive hit the log truck, I fell back [illegible] engine floor on my back." Zeagler deposed that he panicked and decided to jump off the locomotive, but before he could, the impact caused him to fall and trip over his brakeman, hitting his lower back on the brakeman's suitcase and bouncing up and down on his tailbone and lower back several times before the train stopped.

---

[3] (Footnotes omitted.) *Norris v. Central of Ga. R. Co.*, 280 Ga. App. 792, 793 (635 SE2d 179) (2006).

[4] Id. at 794.

Zeagler sued Norfolk Southern pursuant to FELA, claiming negligence and alleging, inter alia, that the company failed to provide him with a reasonably safe place to work in that it breached its duty by not training him in safety measures in the event of a grade-crossing collision. He claims that this failure to train caused his injuries. Based on expert testimony, he also argued that his risk of injury would have been reduced if he had been trained to get below window level in a seated and/or braced position, and had been instructed not to attempt to escape an impending collision by jumping from the train. Norfolk Southern moved for summary judgment, alleging that it had no duty under federal law to provide such training, and that there was no causal connection between the lack of training and Zeagler's injuries. The trial court agreed, and granted the summary judgment motion from which this appeal springs.

FELA provides a federal tort remedy for railroad employees injured on the job,[5] offering protection for those working within the scope of their employment whose duties affect or further the interstate transportation business of a railroad engaged in interstate commerce.[6] To prevail on an FELA claim, an employee "must prove the

___

[5] *CSX Transp. v. Smith*, 289 Ga. 903 (717 SE2d 209) (2011).

[6] Id.; 45 U.S.C.A. § 51, supra.

traditional common law elements of negligence: duty, breach, foreseeability, and causation."[7] Whether Zeagler's claim should be heard by a jury is the issue before us.

1. Zeagler argues that the trial court erred in finding that Norfolk Southern had no duty to train him in safety measures applicable to grade-crossing collisions. Specifically, he contends that the trial court improperly conflated the legal standards for duty and causation in finding that he was "unable to demonstrate that this training *would have actually helped*"[8] protect him from injury. To be sure, the issue of duty should be addressed before considering whether the duty was breached and whether that breach was the cause, or at least a contributing cause of Zeagler's injuries. Each of these terms is discussed with the understanding that their usefulness in ascertaining coverage under FELA may import a slightly different meaning, or at least a different emphasis, than their traditional meaning in Georgia tort law.

Analyzing an FELA claim to decide to whether a railroad owed a duty to the claimant employee to protect him or her from the particular event sued for requires

---

[7] (Citation and punctuation omitted.) *Bagley v. CSX Transp.*, 219 Ga. App. 544, 545 (1) (465 SE2d 706) (1995).

[8] (Emphasis supplied.)

4

consideration of foreseeability.[9] The unfortunate mishap must have been reasonably foreseeable.[10]

It is difficult for a railroad to argue that a particular mishap is unforeseeable when exactly the same event, e.g. bodily injuries to train crews involved in a grade-crossing collision with a motor vehicle, has occurred innumerable times before. And a railroad is required to take precautions commensurate with the danger inherent in a situation and proportionate to consequences which may reasonably be anticipated from neglect.[11] Under FELA, an employer's conduct is measured by the degree of care that persons of ordinary, reasonable prudence would use in similar circumstances.[12]

Viewed appropriately, the record clearly shows that Norfolk Southern could have foreseen grade-crossing collisions and the attendant hazards resulting from a

---

[9] *CSX Transp. v. McBride*, ___ U. S. ___ (III) (B)(131 SC 2630, 2643, 180 LE2d 637) (2011).

[10] *Gallick v. Baltimore & Ohio R. Co.*, 372 U. S. 108, 118 (II) (83 SC 659, 9 LE2d 618) (1963).

[11] *Ga. Southern & Florida R. Co. v. Peters*, 284 Ga. 139, 145 (2) (643 SE2d 786) (2007).

[12] Id. at 144 (1).

5

failure to train its employees. William E. Honeycutt, a retired assistant vice president of operating rules for Norfolk Southern testifying for the railroad, deposed that the company experienced about 2,500 grade-crossing collisions between 2003 and 2007, or about one per day, and that Norfolk Southern knew of both the frequency of collisions and that employees got injured in the collisions. He also deposed that Norfolk Southern knew that crews sometimes attempted to flee the locomotive cab even though it is usually safer to remain inside. Honeycutt deposed that Norfolk Southern provides "no specific rules or instructions pertaining to crossing accidents."

In the case at bar, it is beyond argument that Norfolk Southern had a duty to protect Zeagler from crossing collisions, if such be possible, or at least take steps to mitigate, if possible, the physical injuries which may accompany such mishaps. They are a railroad; he was an employee. He was in service and on the job. Crossing collisions occur frequently, perhaps as many as one per day on the entire Norfolk Southern system. And the injuries to railroad employees can range from the trivial to the fatal.

One of Zeagler's experts, John Ambrose, a retired Norfolk Southern trainmaster who had investigated about 75 grade-crossing collisions and had been in approximately 15 such collisions, testified that because of the information the railroad

6

collects in injury reports after grade-crossing collisions, it could "devise a training program that its employees could follow when a crossing collision is imminent that would greatly reduce the likelihood and severity of injuries." He also testified that

> [i]n virtually every crossing collision, it is much safer to stay in the interior of the locomotive rather than attempt to leap from it. Despite this fact, Norfolk Southern does not tell its employees not to leap from locomotives when a crossing collision is imminent. As a result of this failure to give this specific instruction, and the general failure to train its employees on how to protect themselves in crossing collisions, [Zeagler] was attempting to flee the interior of the locomotive in a panicked state when he sustained his injuries. . . . Norfolk Southern could have devised a procedure for [Zeagler] to follow, such as a standard brace position for him to assume, that would have prevented him from being in a position where he would strike his lower back on the brakeman's grip, and fall over and bounce up and down on his tailbone.

Another expert, Dr. Andrew J. Hurayt, opined that as Zeagler's treating psychiatrist, he believed that Norfolk Southern's lack of training contributed to Zeagler's post-traumatic stress disorder following the collision. Finally, expert witness Dr. Marc B. Wilson, an ergonomist, opined that training in emergency procedures was crucial to allow employees to perform their jobs safely and to reduce panic reactions and therefore the likelihood of physical injury. Had Zeagler been

7

properly trained, Wilson testified, he likely would not have attempted to flee the cab and instead would have assumed a safe, braced position, reducing his risk of falling on his back. Zeagler's affidavit, however, says that he

> was not trained by anyone, in any way, on how to protect myself in the event of a crossing collision. Norfolk Southern has never told me not to attempt to jump off a locomotive in the event of an impending crossing collision. Norfolk Southern never trained me to assume a position of safety or how to avoid injury in any fashion.

Norfolk Southern argues that it had no duty to train its employees on where to go and what to do in the cab of a locomotive preceding a grade-crossing collision, as such incidents contain too many variables to make such training effective. The railroad's expert, Honeycutt, stated in his affidavit that "it is not feasible to attempt to develop a rule or instruction for the proper way for a crew member to respond . . . because the appropriate action to take depends upon the circumstances which can vary from one accident to another."

However, Zeagler's expert, Wilson, opined that

> [t]he argument that there may be a small percentage of incidents in which a standardized training program would not be appropriate can be likened to the argument that there are a small percentage of cases in which seatbelts do not promote safety in automobile collisions. . . . In

8

fact, emergency procedures cannot be designed to cover every single circumstance but are, instead, designed to promote safety in *most circumstances*.[13]

Further, the cases Norfolk Southern cites in support of its proposition that Zeagler's claims fail as a matter of law are factually distinguishable and generally involve a failure of proof on the part of the plaintiff that is not present in the case sub judice.[14]

2. But did the railroad breach its duty to Zeagler, i.e. was it negligent? The plaintiff asserts that the employer was negligent in not requiring, or at least providing, a training course which might teach employees how to move and act once it becomes

---

[13] (Emphasis supplied.)

[14] See *Dent v. Consolidated Rail Corp.*, 187 F.3d 635 (6th Cir. 1999) (unpublished disposition) (court found no duty on part of railroad, as it was unclear what kind of training would have taught plaintiff to avoid "panic" during a crossing collision); *Norfolk Southern R. Co. v. Denson*, 774 So.2d 549, 557 (II) (Ala. 2000) (court found FELA imposed no duty to train plaintiffs to shelter in an area of the locomotive where they would be protected from fire where plaintiffs presented admissible expert testimony only on avoiding bruises and contusions, not on avoiding fire); *Sindoni v. Consolidated Rail Corp.*, 4 F.Supp.2d 358, 366 (III) (4) (M.D. Pa. 1996) (court found no duty where plaintiff relied on pleadings and briefs but presented no evidence in record to show that Conrail's training him not to jump from train but to lie on floor during collision was negligent because it was not more detailed.)

obvious that the heavy train cannot be brought to a stop in time and hence a collision is inevitable.

Grade-crossing collisions occur in a variety of circumstances. But perhaps some general advice might reduce injuries in a wide variety of such collisions, e.g., "do not leap from a speeding locomotive unless one is a Hollywood stunt man." Whether a collision safety course is possible and helpful is a question for the jury. Just as duty is always an issue for the court, so causation is for the jury, except in "plain and palpable" cases. Additionally, in FELA litigation, our Court has noted that,

> [t]he common law definition of causation is not applicable here . . . . The United States Supreme Court has called FELA an avowed departure from the rules of the common law' . . . . [and] 'a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.'[15]

If the jury finds that the railroad did breach its duty by not having the safety course, then it must consider causation. The trial court erred when it took that issue from the jury by finding that Zeagler was "unable to demonstrate that this training

---

[15] (Punctuation omitted.) *Norfolk Southern R. Co. v. Schumpert*, 270 Ga. App. 782, 784 (1) (608 SE2d 236) (2004), quoting *Sinkler v. Missouri Pacific R. Co.*, 356 U. S. 326, 329 (78 SC 758, 2 LE2d 799 (1958).

*would have actually helped*" protect him from injury.[16] The trial court's order, although erroneous, does frame the issue almost correctly. The railroad's breach of its duty, if the jury finds that a training course was feasible, need not be a modality which would have *protected* Zeagler against being injured at all, but the failure to provide such a course is a cause-in-fact of the injuries if such a course would have protected the conductor *or* would have lessened the injuries which did occur. And the claimant in an FELA lawsuit need not provide proof-positive that the railroad's breach of its duty was 100 percent likely to protect him or lessen his injuries. As this court explained in this leading case

> Under [FELA,] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played *any part at all* in the injury or death.[17]

---

[16] Emphasis supplied.

[17] (Citations and punctuation omitted; emphasis supplied.) *Currin v. Seaboard System R.*, 187 Ga. App. 751, 752-753 (371 SE2d 142) (1988).

11

Despite the conflicting expert views outlined in Division 1, on a de novo summary judgment review, we must view the evidence and all reasonable inferences drawn from it in the light most favorable to Zeagler.[18] In the context of negligence, "[t]he debatable quality of [the] . . . issue, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness of leaving the question to the jury."[19]

Thus, if the jury finds that the railroad's breach – and there was no breach if the course was not feasible – played "any part at all" in Zeagler's mishap, then the plaintiff will have proved that the breach was a cause-in-fact of his injuries.

3. The evidence the jury may consider includes the testimony of Norfolk Southern's own expert, Honeycutt, that in most instances it is safest not to jump from the train but rather to move to the floor and brace oneself, coupled with the testimony of Zeagler's experts that he would not have sustained the injuries he did if he had been properly trained to take a seated and/or braced position,[20] and that safety training

---

[18] *Norris*, supra.

[19] (Citations omitted.) *Bailey v. Central Vermont R.*, 319 U. S. 350, 353 (63 SC 1062, 87 LE2d 1444) (1943).

[20] Norfolk Southern contends, correctly, that three of its own accident reports may not be considered, as they are inadmissible hearsay evidence according to this

12

would have tempered negative emotional responses such as his post-traumatic stress disorder.

The trial court's order mentions as its rationale for finding no causation Zeagler's own testimony that had he been seated in the conductor's chair during the accident, he would have been "cut to shreds" by flying debris. The order notes that "the Court finds it ironic that the 'safe position' suggested by [Zeager's expert] would have led to the Plaintiff's death in this particular accident." However, in so finding, the trial court ignored testimony from Zeagler's experts that had Zeagler been trained to assume a braced position in that same chair, bending below the level of the window, he would have been "all right." Also, the trial court apparently did not consider expert testimony that if Zeagler had been trained to squat down, his injuries may not have occurred as they did.

"In numerous cases this court has reiterated the principle that questions of negligence and causation, except in plain, palpable, and indisputable cases, are solely

court's findings in *Wynn v. City of Warner Robins*, 279 Ga. App. 42, 50-51 (4) (630 SE2d 574) (2006). As such, we do not consider them in our analysis.

13

for jury determination."[21] The testimony and evidence renders this case not within the "indisputable" category, clearly presenting fact questions for the jury.

Causation is traditionally a decision for the jury.[22] In the case at bar, the railroad, at trial, may argue that its failure to do its duty by providing the safety course did not play "any part at all in the injury."[23] Such an argument might be availing if the collision in which Zeagler allegedly was injured occurred under unusual circumstances such that a course containing quotidian advice, such as, for example, "do not leap from a speeding locomotive," would not have aided Zeagler. Or the railroad might argue that although its negligence might have been a cause-in-fact or a contributing cause-in-fact of Zeagler's injuries, such negligence was not a proximate cause because it was too attenuated from its unfortunate consequences.[24]

---

[21] *Atlantic Coast Line R. Co. v. Daugherty*, 116 Ga. App. 438, 443 (2) (157 SE2d 880) (1967).

[22] See *Currin*, supra ("under the FELA the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought") (citation and punctuation omitted).

[23] *Currin*, supra at 753.

[24] It is the personal opinion of the author, although not the opinion of this court, that proximate cause should always be an issue for the jury, even in so-called plain and palpable cases. Under present law, an appellate court may intervene in a lawsuit on policy grounds, like a *deus ex machina*, at two points in the determination of

14

4. Norfolk Southern further contends that Zeagler's failure to train claim is preempted, precluded, or superceded by Federal Railroad Administration training regulations, the Federal Railroad Safety Act. Appellate courts generally do not consider issues not ruled on below, and here, the trial court did not grant a general summary judgment based on all grounds raised by Norfolk Southern.[25] Rather, it explicitly based its order only on whether the railroad had a duty to train and whether Zeagler would have been helped by such training. Despite having found that the trial court's ruling is erroneous, as discussed in Divisions 1, 2, and 3, we are not prevented from affirming a grant of summary judgment *if* it were right for any reason *raised* below.[26] However, because of the state of the record and the briefing on appeal, we

---

liability, duty or proximate cause. Litigation would be more predictable if policy considerations could apply on only one issue, duty. See generally C. Mikell, 27 Georgia State Bar J. 2, 60; see also L. Green, Rationale of Proximate Cause, (Vernon Law Book Co. 1927) ("All in all this confused method of dealing with the problem, though widely accepted, is a wretched one, inexcusably perpetrated by intelligent judges, and utterly devoid of scientific foundation."); *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 352 (162 NE 99) (1928) (Andrews, J., dissenting) ("This is not logic. It is practical politics").

[25] See, e.g., *Carter v. Glenn*, 243 Ga. App. 544, 551 (533 SE2d 109) (2000).

[26] *McPherson v. McPherson*, 307 Ga. App. 548, 550 (1) (705 SE2d 314) (2011).

leave issues of whether FELA is preempted, precluded, or superceded for any further proceedings.[27]

*Judgment reversed. Ellington, C. J., and Miller, J., concur.*

---

[27] See *City of Gainesville v. Dodd*, 275 Ga. 834, 839 (573 SE2d 369) (2002) (Sears, P.J., concurring specially) (courts may decline to review issue not ruled upon by the trial court if issue is not adequately briefed or argued by the parties on appeal).