**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 6, 2024**

# In the Court of Appeals of Georgia

A24A0027. CSX CORPORATION et al. v. OGLESBY.

RICKMAN, Judge.

In this interlocutory appeal, CSX Corporation and CSX Transportation, Inc. (collectively "CSXT") appeal from the trial court's order granting in part and denying in part CSXT's motion for summary judgment on negligence claims brought against CSXT by Theartis Oglesby, who alleged that he had been injured when moving a railcar. On appeal, CSXT contends, inter alia, that the trial court erred in finding that CSXT had a legal duty to Oglesby to spot (park) the railcar in a particular location. For the reasons that follow, we agree and reverse.

"[T]o prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, so that the party is entitled

to judgment as a matter of law." (Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). This Court reviews an order granting or denying summary judgment de novo and views "the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) Id. at 624 (1) (a).

So viewed, the record shows that, in 2016, Oglesby worked as a supervisor at Southland Wood Products. Southland was owned by the same family that owned Griffin Lumber Company. Griffin shipped lumber products by rail, and CSXT delivered railcars to Griffin once or twice a week.

The Griffin facility is served by a sidetrack that extends from CSXT's main line into Griffin's property. A storage track extends from the sidetrack in the middle of Griffin's property. When CSXT delivers a railcar to Griffin, the CSXT engineer uses the engine to push the railcar from CSXT's mainline to the sidetrack and then to the storage track. The engineer operates the engine while the CSXT conductor is on the ground directing the engineer where to stop the car. After the railcar is stopped on the storage track, the conductor applies the hand brake. The hand brake is located on an elevated platform on one end of the railcar. It is manually operated by turning the

brake wheel clockwise, which tightens a chain and applies the railcar's brakes. The hand brake is released either by turning the wheel counterclockwise or pulling the quick release lever next to the wheel. After the conductor applies the hand brake to a car on the storage track, he instructs the engineer to push the railcar to test the brake. The hand brake is applied and working effectively if the railcar's wheels slide on the rail rather than turn. If the hand brake is working properly, the conductor uncouples the railcar from the train, which automatically applies the railcar's air brake.

The Griffin storage track has a fall protection system consisting of four poles next to the track with a wire running between the top of them. The fall protection system is used by Griffin or Southland employees while putting a tarp over a loaded railcar. The four poles create three slots for railcars to be spotted on the storage track. The railcars must be spotted between the fall protection poles so the cars can be loaded with a forklift. CSXT's longtime conductor who regularly went to Griffin testified he knew to spot railcars between the fall protection poles and that is what he always did. The conductor also testified that anytime he interacted with Griffin employees, they indicated that the railcars were in an appropriate location.

Oglesby testified that he was involved in moving railcars the entire time he was employed at Southland. According to Oglesby, "a lot of times" a railcar that had been spotted on the storage track needed to be moved to center it between the poles. Oglesby's supervisor estimated that railcars that had been spotted on the storage track needed to be moved approximately two to three times per year. Oglesby testified that the procedure for moving the railcars was to release the railcar's air brakes, let the railcar roll, and apply the hand brake to stop the railcar.

The engineer who regularly delivered railcars to Griffin testified that the only situation in which he had known Griffin or Southland employees to move railcars was if three cars had been delivered, which was not often. According to the engineer, they could not spot more than two cars on the storage track because they were not allowed to spot a car near the end of the track, so if Griffin was getting three cars delivered, one of the cars would be spotted on the sidetrack. The engineer testified that he had seen Griffin or Southland employees use a front-end loader to move a railcar that had been spotted on the sidetrack. The conductor also testified that he had seen someone at Griffin moving a railcar with a front-end loader. The conductor testified that he had never seen Griffin or Southland employees moving railcars using the hand brake.

In September 2016, Oglesby attempted to move a railcar that had been spotted on the storage track. At his deposition, Oglesby could not recall where the railcar was spotted on the storage track or how far it needed to be moved. Oglesby mounted the railcar's brake platform and another employee released the railcar's air brake. Oglesby testified that the railcar started moving towards the end of the track, and he could not stop the railcar using the hand brake. He could not remember if he turned the hand brake clockwise or counterclockwise. The railcar struck a metal block located at the end of the track. Oglesby was thrown from the railcar and broke his foot upon hitting the ground.

Oglesby filed a complaint against CSXT, asserting that CSXT was negligent in spotting the railcar in a place that required Oglesby to move the railcar and that the hand brake was defective. CSXT filed a motion for summary judgment. CSXT maintained that it was entitled to summary judgment on the negligent spotting claim because it did not have a duty to spot the railcar in a particular location, CSXT could not have reasonably foreseen that Southland employees would attempt to move the railcar using the hand brake, and CSXT's spotting of the railcar was not the proximate cause of Oglesby's injury. CSXT also contended that summary judgment should be

5

granted on Oglesby's claim that the hand brake was defective because there was no evidence supporting that claim.

After a hearing, the trial court granted CSXT's motion for summary judgment as to Oglesby's claim that the hand brake was defective, but denied the motion as to the negligent spotting claim. The trial court found that CSXT owed a duty to protect Oglesby from "unreasonable risks of harm and take precautions commensurate with the danger inherent in moving or otherwise loading and unloading railcars to reduce the risk of foreseeable injury to [Oglesby]." The trial court also found that a jury issue existed as to foreseeability and proximate cause. The trial court certified its decision for immediate review, and this Court subsequently granted CSXT's application for interlocutory appeal. This appeal followed.

1. CSXT contends that the trial court erred by holding that CSXT can be liable to its customer's employee who is injured while moving a non-defective railcar based on the location where the railcar is spotted by CSXT at the customer's facility.

> The essential elements of a negligence claim are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages. Thus, the threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff. This issue is a question of law.

(Citation and punctuation omitted.) *Dutt v. Mannar and Co.*, 354 Ga. App. 565, 566 (2) (841 SE2d 132) (2020). A "legal duty" is the "obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm." *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011).

> A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts. In the absence of a legally cognizable duty, there can be no fault or negligence.

(Citation and punctuation omitted.) *Dutt*, 354 Ga. App. at 566 (2). There is no general legal duty "to all the world not to subject others to an unreasonable risk of harm." (Citation and punctuation omitted.) *Dept. of Labor v. McConnell*, 305 Ga. 812, 816 (3) (a) (828 SE2d 352) (2019).

In his complaint, Oglesby claimed that CSXT was negligent in "negligently dropping [the] flat bed rail car in a location where it would have to be manually moved to safely offload the cargo therein;" thus, Oglesby "has to show that [CSXT] had a legal obligation, i.e., a duty" to him to spot the railcar where it would not need to be moved. *Rasnick*, 289 Ga. at 567 (1).

7

Under current Georgia law, a railroad has a duty to furnish railcars that are reasonably safe for their intended use. *Weeks v. Pollard*, 65 Ga. App. 377, 389 (16 SE2d 225) (1941). In *Brown v. Southern R. Co.*, 114 Ga. App. 429 (151 SE2d 519) (1966), this Court explained that:

> [a] railroad company which is a common carrier, if either the initial or the ultimate carrier, transporting a car containing freight, owes a duty to the consignee or his servant, when either the consignee or his servant is engaged in the business of unloading the car, after it has arrived at its destination. This duty is to see that the car and its devices for unloading it are reasonably safe for such purpose. This is true, although the journey of the car is ended, and it has been switched upon a side-track belonging to the consignee.

(Citations and punctuation omitted.) Id. at 430-431 (1). And in *Butler v. Central of Ga. R. Co.*, 87 Ga. App. 492 (74 SE2d 395) (1953), this Court stated that:

> [t]he ultimate carrier is under the duty to inspect a railroad car it receives in shipment to ascertain whether the car and its unloading devices are reasonably safe; and if, on examination, it is discovered that the car or any part of its unloading devices is unsafe, it is the carrier's duty to make the necessary repairs or correct the unsafe condition or to notify the consignee of the dangerous defects or condition.

Id. at 494. CSXT maintains that the trial court improperly expanded the duty of a delivering railroad without a statutory or common law basis.

In support of his claim that CSXT had a legal duty to him to spot the railcar where it would not need to be moved, Oglesby makes three arguments. First, relying on *Alexander v. Harnick*, 142 Ga. App. 816, 817 (3) (237 SE2d 221) (1977), he argues that CSXT owed a legal duty to him because it created a situation of peril that caused Oglesby harm. In *Alexander*, this Court considered whether the owner of a houseboat that had no throwable life preservers on board, in violation of the Georgia Boat Safety Act, could be held liable for his failure to rescue a guest who apparently jumped into the water from the houseboat. Id. The Court recognized the general principle that a person has no duty to rescue another from a situation of peril which the person did not cause, but held that "[i]f the defendant's own negligence has been responsible for the plaintiff's situation, a relation has arisen which imposes a duty to make a reasonable effort to give assistance, and avoid any further harm." (Citations and punctuation omitted.) Id. Here, because Oglesby's negligence claim is not based on a failure to render aid, the common law principle articulated in *Alexander* is inapplicable.

Oglesby also relies on two Federal Employer's Liability Act ("FELA") cases,

9

*Ga. Southern & Florida R. Co. v. Peters*, 284 Ga. App. 139, 145 (2) (643 SE2d 786) (2007) and *Zeagler v. Norfolk Southern R. Co.*, 317 Ga. App. 302 (730 SE2d 657) (2012), to argue that CSXT owed Oglesby a duty of exercising ordinary care in delivering the railcar so it would not need to be relocated. However, because Oglesby was not a railroad employee, FELA, 45 USC § 51 et seq., which "provides a federal tort remedy for railroad employees injured on the job," *Zeagler*, 317 Ga. App. at 303, is not applicable here.

Finally, Oglesby cites *Walker v. CSX Transportation, Inc.*, No. 1:07-CV-1622-GET, 2010 WL 11506865 (N.D. Ga., July 29, 2010) and *Seaboard Air Line R. v. Baker*, 17 Ga. App. 529 (87 SE 828) (1916), but neither case establishes a legal duty for a railroad to spot a railcar in a particular location.

In *Walker*, the district court stated that: "Under Georgia law, the carrier who furnishes the car on the occasion in question has the duty to exercise ordinary care to see that the car and its unloading appliances are in a reasonably safe condition to be used by the consignee or his servants while unloading the car." (Citation, punctuation, and emphasis omitted.) *Walker*, 2010 WL 11506865 at *8. The district court went on to state that "[i]f the car is suitable and reasonably safe when it leaves

10

the possession and control of the railroad, . . . it has exercised due care." (Citation and punctuation omitted.) Id.

In *Seaboard Air Line R.*, a railcar that the plaintiff had been loading for a shipper "was struck at the other end by cars moved by one of the defendant's engines to and upon this track without notice or warning to him, and not within his field of vision." *Seaboard Air Line R.*, 17 Ga. App. at 529-530. The Court of Appeals held, in part, as follows:

> When the defendant placed a car on its side-track to be loaded by the shipper, it did so with knowledge that the shipper and his employees would be engaged in and about the car from time to time until the completion of the loading; and this knowledge carried with it a corresponding duty, in operating and moving this particular car, or other cars upon the same track, to do so in such a manner as would not endanger the safety of those engaged in loading the car, and to give them notice or warning. Servants of shippers or consignees of goods, while loading or unloading the goods from or upon cars on a side-track of the railroad carrier, with its consent, express or implied, are not trespassers or bare licensees, and the railroad company is bound to exercise ordinary care to avoid injury to them while they are so engaged.

(Citations and punctuation omitted.) Id. at 530. Although the Court of Appeals referred to the railroad's obligation to "exercise ordinary care to avoid injury" to the

shipper's employees, the specific duty identified by the Court was a "duty, in operating and moving this particular car, or other cars upon the same track, to do so in such a manner as would not endanger the safety of those engaged in loading the car, and to give them notice or warning." Id. The Court did not consider whether the railroad had a duty to spot a railcar in a particular location.

Given that Oglesby cannot prove a key element of his negligent spotting claim, namely that CSXT had a legal duty to him imposed by statute or a recognized common law principle to spot the railcar where it would not need to be moved, we reverse the trial court's denial of CSXT's motion for summary judgment on the negligent spotting claim. See *Rasnick*, 289 Ga. at 567 (1); *Dutt*, 354 Ga. App. at 566 (2).

2. Given our holding in Division 1, we need not address CSXT's remaining enumerations of error.

*Judgment reversed. Mercier, C. J. concurs and McFadden, P.J. dissents.*

# In the Court of Appeals of Georgia

A24A0027. CSX CORPORATION et al. v. OGLESBY.

MCFADDEN, Presiding Judge, dissenting.

Our courts have said many times and in many ways that a railroad owes a duty to employees of its customers who are engaged in loading or unloading railcars brought to the customer's property for that purpose. At issue today is the scope of that duty.

Theartis Oglesby's employer had constructed a fall protection system to allow its employees to safely load and unload railcars. That system worked only if the railcars were placed, or spotted, in the right location. Repeatedly, over years, the

13

defendants, collectively CSXT, spotted railcars in the wrong location. When CSXT spotted railcars in the wrong location, the customer had to move them. There is evidence of record that, when the customer had to move them, the process was more dangerous. And there is evidence that Oglesby was injured as a consequence.

The majority reverses on the basis that Oglesby has failed to cite a white-horse case. For the majority, his burden was to cite case law holding that CSXT "had a duty to spot a railcar in a particular location." I disagree. The duty is not so narrow.

I would affirm the partial denial of summary judgment to CSXT, so I respectfully dissent.

This is a negligence action. The legal duty enforced in negligence actions "is the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm." *Rasnick v. Krishna Hospitality*, 289 Ga. 565, 566 (713 SE2d 835) (2011). "Negligence consists of exposing another to whom one owes a duty . . . to a foreseeable, unreasonable probability of harm." *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 238 (III) (227 SE2d 336) (1976).

CSXT owed Oglesby that duty. Under Georgia law, a railroad company furnishing a railcar to a customer for loading or unloading has a duty "to see that the

car and its devices for [loading or] unloading it are reasonably safe for such purpose." *Weeks v. Pollard*, 65 Ga. App. 377, 388 (16 SE2d 225) (1941). See, e. g., *Brown v. Southern R. Co.*, 114 Ga. App. 429, 430-431 (1) (151 SE2d 519) (1966) (a railroad company owes a duty to a consignee or its servant to see that a railcar that was delivered to the consignee is reasonably safe for unloading, even if it is on the consignee's property); *Butler v. Central of Ga. R. Co.*, 87 Ga. App. 492, 494 (74 SE2d 395) (1953) (a railroad company has a duty to ascertain if its railcar and unloading devices are reasonably safe and, if not, to "correct the unsafe condition"); *Seaboard Air-Line R. v. Baker*, 17 Ga. App. 529, 530 (87 SE 828) (1916) (a railroad company's knowledge that a shipper and its employees would be engaged with a railcar placed on a side track for loading carried with it a duty to operate and move the car in a way that would not endanger their safety).

The purpose of this duty is to assure "that [the customer's] servants, while themselves exercising ordinary care, can proceed with the work of unloading the car with reasonable safety." *Atlanta & West Point R. Co. v. Creel*, 77 Ga. App. 77, 83 (2) (47 SE2d 762) (1948) (punctuation omitted).

15

This duty is not limited to supplying non-defective cars and devices. It entails a duty to "operat[e] and mov[e]" railcars in "a manner as would not endanger the safety of those engaged in loading the car." *Seaboard Air-Line R.*, 17 Ga. App. at 530.

It is true that under Georgia law "[t]here is no general legal duty to all the world not to subject others to an unreasonable risk of harm." *Williams v. Kasulka Properties*, 370 Ga. App. 653, 658 (3) (898 SE2d 843) (2024). Accord *Maynard v. Snapchat, Inc.*, 357 Ga. App. 496, 499 (851 SE2d 128) (2020), rev'd,, 313 Ga. 533 (870 SE2d 739) (2022). But where — as here — a common law duty does run, our law does not require authority directly on point. Our law does not presuppose "blanket exception[s]" that bar recovery under recognized common law duties, unless a plaintiff can cite case law on all fours. *Maynard*, 313 Ga. at 545 (c), (d). On the contrary, it is CSXT's burden, as the movant on summary judgment, to show that it fell within an exception to the general duty. See generally *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (the moving party on summary judgment has the burden of demonstrating that it is entitled to judgment as a matter of law). It has not done so.

Oglesby "asserted a conventional [negligence] claim based on [an] ordinary . . . duty recognized under our decisional law[.]" *Maynard*, 313 Ga. at 545 (4) (b). And he pointed to evidence that CSXT knew railcars should be spotted in the designated fall-protection area for safety reasons and knew that, if railcars were not spotted in that area, its customer's employees, such as Oglesby, would have to move the railcars before loading them.

So I would affirm the trial court's finding that CSXT owed Oglesby a duty in connection with the spotting of the railcar. I also agree with the trial court's findings that genuine issues of material fact exist as to the other elements of Oglesby's negligence claim related to the spotting of the railcar and would affirm the denial of summary judgment as to that claim as well.